# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ELLEN ZECHMAN,                          :
                                        :
                    Plaintiff,          :
                                        :
          v.                            :          C.A. No. 05-159-JJF
                                        :
CHRISTIANA CARE HEALTH SYSTEMS,         :
                                        :
                    Defendant.          :

---

## REDACTED VERSION OF APPENDIX OF EXHIBITS TO
## DEFENDANT CHRISTIANA CARE HEALTH SYSTEMS'
## MOTION FOR SUMMARY JUDGMENT

---

David H. Williams (DE 616)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
P.O. Box 2306
Wilmington, DE 19899
302.888.6900
dwilliams@morrisjames.com

Michael J. Ossip (admitted pro hac vice)
Thomas S. Bloom (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215.963.5543

Counsel for Defendant Christiana Care
Health Systems

## TABLE OF CONTENTS

| PAGE NO. | DESCRIPTION |
|---|---|
| A-1 | Plaintiff's Transcript from East Carolina University School of Medicine dated Sept. 7, 2001 |
| A-2 | Plaintiff's ERAS Common Application Form and Letters of Recommendation dated Sept. 8, 2001 |
| A-10 | Letter from Plaintiff to Dr. Newton dated Nov. 30, 2001 |
| A-12 | E-mail from Plaintiff to Clara Richards dated Mar. 18, 2002 |
| A-13 | Letter from Plaintiff to Sandi Kardos dated Apr. 9, 2002 (faxed Apr. 10, 2002) |
| A-14 | 2002 – 2003 Resident Agreement of Appointment |
| A-19 | Letter from Plaintiff to Dr. Dombroski dated August 4, 2002 |
| A-20 | Christiana Care Health Services Dep't of Obstetrics & Gynecology Resident Review Committee Minutes dated Oct. 28, 2002 |
| A-23 | Mentor Meeting Notes from Nov. 23, 2002 |
| A-24 | Letter from Anthony Sciscione, D.O. to Plaintiff dated Dec. 12, 2002 |
| A-25 | Memorandum from Anthony Sciscione, D.O., to OB/GYN Attendings dated Dec. 13, 2002 |
| A-26 | Complaint in Ellen Huffman-Zechman, M.D. v. Pitt Memorial Hospital, et al., No. 4:03-cv-16-H(3) filed in the United States District Court for the Eastern District of North Carolina, Eastern Division, filed Jan. 31, 2003 |
| A-33 | E-mail from Matthew Hoffman, M.D., to Anthony Sciscione, D.O., dated Mar. 14, 2003 |
| A-34 | Notes from Mar. 17, 2003 Special Meeting to Review CREOG Scores |
| A-35 | House Officer Evaluation Form: Evaluation of Plaintiff by Faith Brosch, M.D., dated June 2, 2003 |
| A-39 | Christiana Care Health Services Dep't of Obstetrics & Gynecology Resident Review Committee Minutes dated June 16, 2003 |
| A-42 | 2003 – 2004 Resident Agreement of Appointment |
| A-48 | E-mail from Plaintiff to Dr. O'Connor dated June 19, 2003 |
| A-50 | Plaintiff's July 22, 2003 Diary Entry |
| A-51 | Letter from Plaintiff to Dr. Ekbladh dated July 23, 2003 |
| A-53 | Request for Disability Accommodation Completed by Plaintiff dated July 24, 2003 |
| A-54 | Letter from ACGME to Lamar Ekbladh, M.D., dated July 28, 2003 (received Aug. 4, 2003) |

| PAGE NO. | DESCRIPTION |
|---|---|
| A-57 | July 30, 2003 Acknowledgement Form Signed by Plaintiff and Lamar Ekbladh, M.D. |
| A-58 | E-mail from Plaintiff to Lamar Ekbladh, M.D., dated Aug. 1, 2003 |
| A-59 | File Notes from Dr. Ekbladh dated Aug. 7, 2003 and Aug. 13, 2003 |
| A-60 | Notes from Lamar Ekbladh, M.D., dated Aug. 11, 2003 |
| A-62 | Physician's Section of Request for Disability Accommodation Completed by Dr. Fraser |
| A-64 | Christiana Care Health Services Dep't of Obstetrics & Gynecology Resident Review Committee Minutes dated Aug. 18, 2003 |
| A-66 | Letter from Lamar Ekbladh, M.D., to Plaintiff dated Aug. 20, 2003 |
| A-68 | Evaluation of Plaintiff by Christine Maynard, M.D., dated Sept. 2, 2003 |
| A-69 | Letter from Lamar Ekbladh, M.D., to Plaintiff dated Sept. 16, 2003 |
| A-70 | Anonymous House Officer Evaluation Form: Evaluation of Plaintiff dated Sept. 25, 2003 |
| A-74 | House Officer Evaluation Form: Evaluation of Plaintiff by Moses Hochman, M.D., dated Sept. 25, 2003 |
| A-78 | Professional Associate Questionnaire regarding Plaintiff dated Sept. 28, 2003 |
| A-79 | Professional Associate Questionnaire regarding Plaintiff dated Sept. 29, 2003 |
| A-80 | Christiana Care Health Services Dep't of Obstetrics & Gynecology Resident Review Committee Minutes dated Sept. 29, 2003 |
| A-83 | Letter from Lamar Ekbladh, M.D., to Plaintiff dated Sept. 30, 2003 (sent Oct. 2, 2003) |
| A-84 | Certification of Health Care Provider faxed Oct. 3, 2003 (received Oct. 3, 2003) |
| A-91 | Charge of Discrimination to Delaware Dep't of Labor and E.E.O.C. dated June 9, 2004 |
| A-94 | List of Dep't of Obstetrics and Gynecology Resident Review Committee Members and Birth Dates |
| A-95 | National Resident Match Program Rank List of Plaintiff's 2002 Applications to OB/GYN Residency Programs |
| A-97 | Affidavit of Lamar Ekbladh, M.D. |
| A-99 | Deposition of Ellen Zechman, M.D., dated June 20, 2006 and Aug. 16, 2006 |
| A-208 | Deposition of Paul Kaminski, M.D., dated July 14, 2006 |
| A-225 | Deposition of David Fraser, M.D., dated July 28, 2006 |
| A-251 | Deposition of Lamar Ekbladh, M.D., dated Aug. 2, 2006 |

| PAGE NO. | DESCRIPTION |
|---|---|
| A-277 | Deposition of Anthony Sciscione, D.O., dated Sept. 7, 2006 |
| A-293 | Deposition of Janice Tildon-Burton, M.D., dated Sept. 20, 2006 |
| A-302 | E.E.O.C. v. Avecia, Inc., 151 Fed. Appx. 162 (3d Cir. Oct. 13, 2005) |



For Eras Use Only

**SCHOOL OF MEDICINE**
**EAST CAROLINA UNIVERSITY**
**Greenville, North Carolina 27858-4354**

Name: **HUFFMAN-KECHMAN, ELLEN RUTH**

Local Address: 101 LAURA LANE, APT. C-3
GREENVILLE, NC 27858
Phone: 752-0735

Birth Place: MILWAUKEE, WI
Birthdate: ████████/57
Spouse's Name: JAMES KECHMAN

Degree(s) Previously Conferred:
A.S., 1985 (COASTAL CAROLINA C.C.)
B.S., 1990 (ECU)

Social Security No: REDACTED 0157
Parents' Name: MR/MRS. PAUL E. HUFFMAN
Parents' Address: 450 AQUARIUS DRIVE
WILMINGTON, NC 28405
Date of Enrollment: 08/20/90

Grading System:
H - Honors;                A - Excellence;
B - Above Average;         C - Average;
P - Pass;                  F - Failure.

| Year  Course | Grade | Year  Course | Grade |
|---|---|---|---|
| **90-91** | | **92-93 Clerkships in:** | |
| Human Anatomy I | C | Medicine | B |
| Biochemistry | F* | Pediatrics | B |
| Philosophy and Medicine I | A | Surgery | B |
| Primary Care Conference | A | Psychiatry | A |
| Human Anatomy II | C | OB/GYN | B |
| Behavioral Sciences | B | Family Medicine | B |
| Genetics | B | | |
| Microbiology & Immunology I | C | **93-94 4th Year Electives in:** | |
| Physiology | C | Histology Elective | B |
| Biochemistry | | Anatomy Review | A |
| remedied 8/6/91 | C* | Elective in Pathology | B |
| | | Dermatology | B |
| **91-92** | | Allergy/Immunology | B |
| Philosophy and Medicine II | B | Clinical Pharmacology and Applied | |
| Microbiology & Immunology II | C | Therapeutics | A |
| Psychopathology & Sexuality | B | Pediatric Cardiology | A |
| Pharmacology | C | Nutrition and Patient Education in | |
| Pathology | B | Ambulatory Care Setting | H |
| Primary Care Conference | B | Diagnostic Imaging | B |
| Clinical Aspects of Substance Abuse | B | Clinical, Community, and Professional | |
| Physical Diagnosis & Clinical Assessment | B | Correlates | B |
| Introduction to Medicine | B | Eclectic Psychiatry | A |

M.D. degree conferred on May 07, 1994

Signed _____

Date    September 7, 2001

NOT OFFICIAL WITHOUT SIGNATURE AND SEAL

D0293
CONFIDENTIAL

## ERAS Common Application Form

### General Information

| | |
|---|---|
| **Name:** ZECHMAN, ELLEN HUFFMAN | **ID#:** REDACTED *0157* |
| **Other Names:** | **Gender:** *No Response* |
| **School:** *East Carolina University School of Medicine* | **Email:** *zechman@coastalnet.com* |
| | **NRMP #:** *10114352* |
| **Citizenship:** *U.S. Citizen* | **SSN:** REDACTED *0157* |

**Birth Place:** *WISCONSIN*
**Birth Date:**
**USMLE ID:** *4-012-569-2*

**Contact Address:**
*1608 Tryon Road*
*New Bern, NC 28560*

**Home Address:**
*1608 Tryon Road*
*New Bern, NC, 28560*

**Phone 1:** *252-636-3869*
**Phone 2:** *757-596-8150*

**Phone:** *252-636-2625*

| | | | |
|---|---|---|---|
| Military Service Obligation? | *No* | Years: | Start Date: |
| Felony Conviction? | *No* | Reason: | |
| Limiting Aspects of Candidacy? | *No* | Description: | |

### Examinations

| Examination | Status | Date |
|---|---|---|
| *USMLE Step 3* | *Passed On* | *05/1996* |
| *USMLE Step 1* | *Passed On* | *06/1994* |
| *USMLE Step 2* | *Passed On* | *03/1994* |

### Medical Licensure

| | | |
|---|---|---|
| Current Medical Licensure: | *Permanent* | |
| Medical Licensure Problem? | *No* | Reason: |
| Current malpractice case(s) pending? | *No* | Reason: |
| Past History? | *No* | Explanation: |
| Medical Education Interrupted? | *No* | Reason: |

### Education Commission for Foreign Medical Graduate Certification

| | | |
|---|---|---|
| Are you certified by the ECFMG? | *No* | Certification Date: |

### Medical Education

| Institution & Location | Dates Attended | Degree | Date of Degree |
|---|---|---|---|
| *East Carolina University School of Medicine*<br>*Greenville, NC* | *08/1990 - 05/1994* | *Yes, Doctor of Medicine* | *05/1994* |

A-2

D0279
CONFIDENTIAL

M___al School Honors/Awards

*None*

## Graduate Education

| Institution & Location | Dates Attended | Degree | Degree Date | Field of Study |
|---|---|---|---|---|
| *None* | | | | |

## Undergraduate Education

| Institution & Location | Dates Attended | Degree | Degree Date | Field of Study |
|---|---|---|---|---|
| *East Carolina University Greenville North Carolina* | *08/1987 - 05/1990* | *Yes, BS* | *05/1990* | *Electronics, Chemistry* |
| *Coastal Carolina Community College Jacksonville, North Carolina* | *08/1985 - 05/1987* | *Yes, AAS* | *05/1987* | *Electronics Engineering Technology* |

## Previous Residencies

| Institution | Program Director | Program Supervisor | Dates Attended | Years | Discipline | Reason for Leaving |
|---|---|---|---|---|---|---|
| *Riverside Regional Medical Center Newport News, VA, United States Of America* | *David Rayl, MD* | *David Rayl, MD* | *07/2001 - 06/2002* | *1* | *ObGyn-Preliminary* | *One year, non-continuing ACOG approved position.* |
| *East Carolina University School of Medicine Greenville, NC, United States Of America* | *Jan F. Silverman, MD* | *Jan F. Silverman, MD* | *07/1994 - 04/1996* | *2* | *Pathology* | *Left to start family. High risk pregancy...unable to work and continue pregancy.* |

## Work Experience

| Organization | Position | Dates | Description | Reason for Leaving |
|---|---|---|---|---|
| *American College of General Medicine* | *Assistant Professor of General Medicine* | *11/2000 -* | *Assist and advise the College of General Medicine in the development and implementation of training programs for college members.* | *Currently assisting via fax, phone, e-mail.* |

D0280
CONFIDENTIAL

Work Experience

| Organization | Position | Dates | Description | Reason for Leaving |
|---|---|---|---|---|
| *Merci, Community Clinic* | *Staff Physician* | *10/1999 -* | *Community free clinic for the working poor. Walk in ambulatory medicine for male and female adults. Multicultural patient population.* | *Currently on Leave of Absence* |
| *The Ladies Clinic, An Ambulatory Wellness Clinic* | *Physician, owner* | *04/1998 -* | *General outpatient medicine for adult, non-pregnant women.* | *Assist prn. Still current owner.* |
| *Allergy & Asthma Clinic of New Bern* | *staff Physician* | *06/1996 -* | *Assist specialist in all aspects of treating patients with allergic disease and asthma. Treating anaphylaxis and acute asthma attacks.* | *Currently assist PRN* |

Volunteer Experience

| Organization | Position | Dates | Description |
|---|---|---|---|
| *Merci Community Free Clinic* | *Staff physician* | *11/1999 -* | *Community clinic serving a multicultural adult population. Currently on indefinite Leave of Absence.* |

Research Experience

| Organization | Position | Dates | Description |
|---|---|---|---|
| *East Carolina University Dept. of Pathology* | *Resident physician* | *02/1995 - 02/1996* | *Assisted attending physician, Vijay V. Joshi with collection, processing and documentation of skin specimens from patients with Ehlers Danlos Syndromes. The goal of The project was to study histologic patterns of collagen and elastin in the dermis as well as the internal elastic lamina of the great vessels in this patient population.* |

Publications

*Journal of the American Academy of General Physicians, Physical Therapy, An Important, Yet Often Ignored part of Medical Care, Ellen Huffman-Zechman, MD, 11/2000, Volume: one, number three, Pages: 13-15.*

Language Fluency (Other than English)

*Spanish Language Training for Health Professionals*

Hobbies & Interests

*Reading, Dancing Weight training*

Other Awards/Accomplishments

*American Lung Association—Board of Directors, Eastern Region 1994-1996 AMA Physicians Recognition Award valid through 2002.*

D0281
CONFIDENTIAL

ation

I certify that all information in this application is true and no material omissions have been made.

Certified by: *ZECHMAN, ELLEN HUFFMAN*                Date: *09/08/2001*

D0282
CONFIDENTIAL

Personal Statemment : Ellen Huffman Zechman, MD

After practicing general medicine for 4 years, and obtaining additional experience in obstetrics and gynecology, I can truly say that I have a passion for women's healthcare. Whe I walk out of the hospital smiling and happy after working a 36 hour labor and delivery call shift, there is no doubt in my heart that I have made the right career choice.

Following my graduation from East Carolina University School of Medicine in 1994, I began a residency in Pathology. I left the Pathology program after 21 months to complete my persona goal of having a family. During that time I assisted my husband in his allergy clinic and became aware of how much I enjoyed the personal interaction with patients. Although I enjoye pathology, as an outgoing talkative person, a career behind the microscope no longer appealed to me.

Since that time I have practiced general medicine as a general practitioner at the Merci Clinic in New Bern, NC. In 1999 I founded my own clinic, The Ladies Clinic, An Ambulatory Wellness Clinic For Women. After caring for my patients on a daily basis, I wish to expand my skills in order to provide more comprehensive health care to the women in the rural North Carolina counties of Craven and Carteret.

With the experience of practicing medicine on my own, I can fully appreciate the learning opportunities that are available in an Obstetrics and Gynecology training program. My interes is genuine and my desire to learn is great. I sincerely feel that this is my "calling" in lif and that God has led me to this profession. My family supports me in this endeavor.

As a resident, I will be hard working and dependable. I know the importance of being a team member in the health care setting. Knowing first hand that patient care is of the utmost importance. I am fully committed to working with my colleagues to get the job done.

I sincerely ask that you allow me to become a member of your Ob/Gyn team, learning and practicing the specialty of Obstetrics and Gynecology.

Thank you, Ellen Huffman-Zechman, MD

D0283
CONFIDENTIAL

Sci   of Medicine
Department of Obstetrics and Gynecology
East Carolina University • Greenville, NC 27858-4354
252-816-4669 office • 252-816-5329 fax

December 5, 2000

Samuel M. Atkinson, Jr. MD
Professor and
Residency Program Director
252-816-4669 Phone
252-816-5329 fax
atkinsons@mail.ecu.edu

Primary Women's Health
General Obstetrics
and Gynecology
Maternal-Fetal Medicine
Gynecologic Oncology
Reproductive Endocrinology
and Infertility
Fetal Diagnosis and Genetics
Urogynecology
Pelvic Reconstructive Surgery
Reproductive Physiology

RE:   Ellen Huffman-Zechman, MD
      ERAS ID (REDACTED)0157

Dear Program Director:

It is rare that one has the opportunity to recommend a former student for residency but it is indeed a compliment that a student remembers the teaching she obtained while a student on our service.

Ellen graduated from East Carolina University School of Medicine in 1994. She impressed us as a student as she was somewhat older than the traditional fast track student. She balanced marriage, family and her academic obligations as well as her clinical requirements. She did satisfactorily remediate a biochemistry course and following that was essentially a "B" student. In all clinical areas she being a people person she excelled.

Ellen made an early decision to go into Pathology and following 18 months in a straight Pathology residency she realized that Pathologists were becoming an excess in the market place and elected to drop out.

Initially she assisted her husband and his P.A. in running his allergy practice. Soon she was volunteering in an indigent general medical clinic in New Bern and finding a strong attraction to people and particularly to female medicine, elected to open her own private practice for the unique "ambulatory and outpatient" care of women since she was without hospital privileges. While these types of practices are very successful in my former State of Florida, it was a unique concept to Eastern North Carolina and was enormously successful.

Ellen has decided that she is not satisfied with just providing outpatient care to women and thus wishes to re enter mainstream medicine by becoming a resident in Obstetrics and Gynecology.

I have chatted with Ellen and have encouraged her to move her timetable up and apply for residency as soon as possible and not wait to enter the Match for the year 2002. She is thus making a late application for the PGY 1 Class beginning July 2001. I would remind programs that she could be contracted outside of that Match and begin the residency sooner if there were an opening.

East Carolina University is a constituent institution of the University of North Carolina. An Equal Opportunity/Affirmative Action Employer

D0285
CONFIDENTIAL

I highly recommend Ellen Huffman-Zechman, MD to you and urge you to give s consideration to this bright and energetic woman.

Sincerely,

Samuel M. Atkinson, Jr., MD
Professor

D0286
CONFIDENTIAL

A-8



**BLADEN COUNTY HOSPITAL**

December 8, 2000

ECU-SOM office of Student Affairs
Attn: Vickie Ogden
2S-20 Brody
Greenville, NC 27858-4354

RE: Ellen Huffman-Zechman, MD
    ERAS REDACTED 0157

Dear Program Director:

It is a great pleasure for me to recommend Dr. Ellen Zechman to your residency program in OB-GYN for the year 2001. I have known Dr. Zechman since 1990 when we started medical school at the East Carolina University School of Medicine. We quickly became good friends and discussed many of the events we experienced in the classroom and the various rotations in the hospital and clinics. On many an occasion I can recall Dr. Zechman taking extra time with the patients that had been assigned to her and going that extra mile when many of her classmates would have gone home, or off to the library to study. In short she arrived early and left late. We have remained good friends since graduating in 1994 at which point she began a residency in Pathology. After 18 months, she left the Pathology residency to complete her family while she assisted her husband in his practice at the Allergy & Asthma Clinic. It was no surprise to anyone that knows Ellen when she did not return to Pathology. Ellen is very gregarious and confining that cheerful personality to a Pathology Department seemed a terrible waste. Since 1997 Dr. Zechman has practiced general medicine at the Merci Clinic, a community free clinic in Craven County. She established her own Ladies Clinic where she has practiced outpatient medicine for adult women since 1998. I was not surprised when Dr. Zechman called me recently and talked to me about her interest in beginning an OB-GYN residency and I volunteered to write this letter of recommendation without her even asking me. Dr. Zechman is bright, energetic and has an unswerving devotion to medicine. She offers the added advantage to any program that of actually having practiced medicine. Her pathology training should allow her to go into the operating room with added confidence and enthusiasm.

In summary Dr. Zechman is an eager, experienced, hard working individual who would be an asset to any program in which she applies. It is with pride and confidence that I recommend her to your program. Should you wish to discuss any aspect of Dr. Zechman's qualifications with me please feel free to contact me.

Sincerely,

Dr. Vicki Lanier

Vicki Lanier                                    A-9
Medical Director of Emergency Department
Chief of Medical Staff

P.O. Box 398, Elizabethtown, N.C. 28337-0398 • (910) 862-5100

D0287
CONFIDENTIAL

REDACTED

ECU0151

REDACTED

ECU0152

REDACTED

ECU0164

**Ellen Huffman Zechman, MD**
1608 Tryon Road
New Bern, NC  28560
e-mail ELLENZECHMAN@aol.com
Phone: 252-636-2625

April 9, 2002

Sandi Kardos
Residency Coordinator
Christiana Care Health Services Program
4755 Ogletown-Stanton Rd.  STE 1901
PO Box 6001
Newark, DE  19718

**FAX: 302-733-3340**

Dear Ms Kardos,

This morning I applied to your program through ERAS.  I am now faxing my CREOG scores and my application.  If you can download the ERAS  application, it would probably be more readable.

Sincerely,

Ellen Zechman, MD

D0303
CONFIDENTIAL



**CHRISTIANA CARE**
HEALTH SERVICES

## Resident Agreement of Appointment

This Agreement is made and executed by and between Christiana Care Health Services (hereafter referred to as Christiana Care) and Ellen Huffman-Zechman (hereafter referred to as Resident) for a position as a 2nd year Obstetrics/Gynecology Resident, and shall be effective from 1 July 2002 through 30 June 2003.

**I. Mutual Responsibilities:** The Resident and Christiana Care mutually agree to: 1) fulfill the educational requirements as set forth by the accrediting body of the graduate training program to which the resident has been admitted. Specifically: <u>Allopathic Programs:</u> Accreditation Council for Graduate Medical Education (ACGME); <u>Dental and Oral Maxillofacial Programs:</u> American Dental Association (ADA); <u>Osteopathic Programs:</u> American Osteopathic Association (AOA); <u>Podiatric Programs:</u> Council of Podiatric Medical Education (CPME); <u>Pharmacy Programs:</u> American Society of Hospital-System Pharmacists (ASHP), 2) fulfill the established program of each individual residency program to which the Resident is accepted, and 3) abide by the applicable portions of the Medical-Dental Staff Rules and Christiana Care rules, regulations, policies, and procedures that may be changed or amended from time to time.

**II. Resident Responsibilities:** The Resident agrees to:

**a.** Fulfill the patient care requirements of the graduate training program and meet expected competencies of their program. The resident further agrees to provide safe, effective, efficient, and compassionate patient care as assigned or required under the circumstances and delineated by the accrediting body as listed in Section I, the established residency program of each Department to which the Resident is assigned, the Resident's department, as well as the department to which he/she will rotate, and the applicable portions of the Medical Dental Staff Rules and Christiana Care rules, regulations, policies, and procedures which may change or be amended from time to time.

**b.** Perform his/her duties as required including but not limited to the completion of medical records in a timely fashion for the duration of this Agreement as defined in Christiana Care policies.

**c.** Meet the professional licensing requirements of the State of Delaware to be licensed to practice as required by the specific specialty.

**d.** Present at all times a proper appearance and display a professional cooperative attitude towards patients, visitors, Christiana Care employees, fellow Resident members, and Medical-Dental Staff. This will include participation in the CCHS program of unsurpassed Excellence.

**e.** Abide by Christiana Care rules and regulations, policies and procedures, including but not limited to requirements for pre-employment physicals (including drug screen) and adequate



EXHIBIT
Zechman
52
_____

D0274
CONFIDENTIAL

A-14

immunizations, infection control, quality improvement, risk management, and stress management.

f. Abide by the Christiana Care policy regarding sexual harassment as outlined in Section III of the Resident Manual.

g. Abide by all other policies and procedures as outlined in the Resident Manual, including but not limited to:
- Fair Hearing and Academic Appeal [Grievance Procedures],
- Impaired Physician [including substance abuse].
- Psychiatric issues,
- Resident Stress,
- Leaves of Absence, both Professional and Parental.

h. Resident will cooperate with CCHS Risk Management and Legal Affairs in the review, investigation, and adjudication of all complaints or other legal actions brought against CCHS or its agents. This provision shall survive the termination of this Agreement of Appointment.

**III. Christiana Care Responsibilities:** Christiana Care agrees to:

a. Assure that the educational programs of hospitals used for affiliated and integrated training meet the criteria for Board certification in the respective specialty or specific regulations of the program.

b. Pay Resident a stipend at the annual rate of $40,476.80. Such stipend shall be paid bi-weekly in equal installments. Christiana Care shall have the right to withhold any taxes, social security contributions, or any other sums required to be withheld by law or requested to be withheld by the Resident.

c. Maintain professional liability insurance as outlined in Section II of the Resident Manual covering Resident while he/she is performing services pursuant to this Agreement. Resident acknowledges that <u>only</u> activities prescribed and supervised in the education/training program of the Resident shall be covered. Insurance is designated as "occurrence", with tail.

d. Assist Resident in obtaining a State of Delaware Limited Institutional License as required by the accrediting bodies listed in Section I.

e. Provide and maintain suitable on-call quarters for nights on duty. Quarters will be assigned and access provided by the program through which Resident is rotating.

f. When assigned to night call Resident will be provided an evening meal and the following morning meal at no charge. This does not include any meals that are part of normal working hours.

g. Provide and launder prescribed uniforms and lab coats as outlined in Section I of the Resident Manual.

D0275
CONFIDENTIAL

h. Provide benefits to Resident as outlined in Appendix A. These benefits or the eligibility conditions may be changed to conform to future legal requirements and/or future Christiana Care Human Resources policies. The administration of benefits is governed by the Plan documents, hospital policies, and current legislation.

i. Provide counseling and support services as described in Sections III and IV of the Resident Manual.

**IV. Off-Duty Activities:** Resident recognizes that this residency is a full time position and that off-duty hours are to be used as Resident sees fit as long as such activity does not interfere with his/her obligations to Christiana Care residency program. Resident also recognizes that remunerative professional activities outside the scope of the residency program are considered not to be in the best interest of the Resident and Christiana Care does not insure the resident for these activities. Resident agrees to abide by the Moonlighting policy as outlined in Section IV of the Resident Manual.

**V. Reappointment**

Upon the recommendation of the Department Education Committee and Program Director, fulfillment of all licensure and regulatory requirements, and approval of the Graduate Medical Education Committee, Resident will be offered a position at the next level of graduate medical training for the upcoming academic year. This offer will be made no later than eight months after the start date of this contract, and will be contingent on the successful completion of the present year of training, as determined by the Department Education Committee, the Program Director, and the Graduate Medical Education Committee. Resident may use the Fair Hearing and Academic Appeal Process to appeal any decision to not re-appoint Resident for upcoming year. Should any Fair Hearing and Academic Appeal process extend past the termination date of this contract, Christiana Care has no obligation to continue to employ Resident but will complete the Fair Hearing and Academic Appeal process according to the current procedures.

**VI. Termination**

    **A. By Resident:**
        1. The Parties agree that if it should become necessary for the Resident to terminate the Agreement before its expiration date, the Resident will provide 30 days written notice.

    **B. By Mutual Consent:**
        1. The effective date of this Agreement may be modified or terminated at any time by mutual written consent of the Resident and the Program Director.

    **C. Dismissal for Academic Reasons and Summary Dismissal:**
        1. A final determination to summarily dismiss or dismiss for academic reasons (as defined in the Fair Hearing and Academic Appeal Policy) shall result in a termination of the Agreement of Appointment.

D0276
CONFIDENTIAL

VI.     **Applicable Law:** The laws of the State of Delaware shall govern This Agreement.

VII.    **Waiver of Breach:** The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

VIII.   **Severability:** In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

IX.     **Nondiscrimination:** Christiana Care agrees (I) not to discriminate against any of its employees or applicants for employment because of race, color, religion, sex, or national origin, and further that it will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to race, color, religion, sex, or national origin and (2) to comply with all provisions of Executive Order 11246 of September 24, 1965, the rules, regulations, and relevant orders of the Secretary of Labor, and any other applicable laws.

X.      **Term:** The term of this agreement is for one year.

XI.     **Entire Agreement:** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements. Any amendments to the Agreement must be in writing and executed by the parties hereto.

**<ins>By signature it is acknowledged that the Resident has read the entire Agreement prior to its execution.</ins>**

_Ellen Huffman-Zechman_
Ellen Huffman-Zechman
Resident

_April 15, 2002_
Date

_Paul F. Kaminski_
Paul F. Kaminski, MD
Program Director

_16 April 02_
Date

_Brian W. Little_
Brian W. Little, MD, Ph.D.
Vice President, Academic Affairs and Research

_29 May 02_
Date

D0277
CONFIDENTIAL

A-17



**CHRISTIANA CARE**
HEALTH SERVICES

### Benefits Plan for Residents

The Benefits Plan for the Christiana Care Health Services, Inc. provides the following benefits at no cost to CCHS Residents:

| | |
|---|---|
| **Paid Leave:** | As defined in the Academic Affairs "Paid Leave Policy" |
| **Group Health Insurance\*:** | Mid Atlantic Advantage "Plan A" (in State)<br>Care First Plan E (out of State) |
| **Group Dental Insurance\*** | Standard Plan |
| **Group Life and AD&D Insurance\*:** | (1X Salary) |
| **Long Term Disability Insurance\*:** | Plan "A" |

\* Effective the first day of the month following employment, health and dental include coverage of eligible dependents.

**Optional Benefits:**

Optional benefits available requiring contributions by participants include:

- Tax Deferred Annuity/Matching Contributions Program
- Savings Bond Program
- Credit Union
- Dependent Care Reimbursement Program
- Health Care Reimbursement Program
- Additional Life, Health and LTD Insurance options under CCHS Flexible Benefits Program

Please see Benefits Booklets for more detailed information relative to the above. You will receive a Benefit Booklet under separate cover.

D0278
CONFIDENTIAL

REDACTED

ECU0153

REDACTED

D0564
CONFIDENTIAL

REDACTED

D0565
CONFIDENTIAL

REDACTED

D0566
CONFIDENTIAL

Mentor meeting:

Ellen Zechman, MD

Meeting Date:          November 23, 2002

Ellen feels she has done well over the past several weeks. She was involved in an incident with a private attending in which a patient was a direct admit and to be assessed in triage by Ellen. This was not done secondary to business and recommendations of the in-house attending and Ellen was criticized by the private attending for not managing the patient appropriately. Ellen describes some conflict with her peers noting that she is being criticized without reason. She recently met with Dr. Kelly who oriented her on CREOG surgical skills. He felt her performance was adequate but should be better.

I reviewed some of my observations with Ellen which include:

She works hard but often disappears in triage. She must be more committed to her job and responsibilities. Although she is entitled to eat she should not advertise that she is going to spend time eating when other team members do not have the chance to eat. She must be familiar with all patients in triage and continue to improve in terms of efficiency and prioritizing. Focus is critical for Ellen who tends to become distracted at times.

I have established a set weekly meeting time with Ellen which is supported by Dr Scisione (Wed 11:00 am – Noon)

Plan at this point:

### Surgical skills
Ellen will receive a reading assignment and written quiz weekly. She must achieve an 80% score on this quiz. The quiz will be related to the surgical teaching curricula we have established. She will continue clinical exercises with Dr Kelly. She must do well On Wed 26th resident surgical skill module.
I will have Ellen read about and review various procedures and recite the operative reoport to me (one a week)
I have added several cases on in the next several weeks and will try to have Ellen assist me in these surgeries

### Personal interactions
Ellen will work on communicating with peers and attendings in regards to her performance. If a conflict develops I stressed the importance of learning from the event and communicating. I emphasized the importance of feedback and I will personally speak with those who have worked with Ellen (physicians, nurses, etc)

### CREOG preperation
Ellen will follow a CREOG prep protocol using "Resident Test Companion" cards

D0569
CONFIDENTIAL



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

December 12, 2002

Ellen Huffman-Zechman, MD
34 east Newtown Place,
Newark. DE 19702

Dear Dr. Zechman:

Thank you very much for meeting with me to discuss your performance. As we discussed there has been cause for concern in your progression over the last six months in our program. Unfortunately, this is most likely secondary to the poor educational base that you received in your previous program. This is compounded by entering our program which is academically and clinically more rigorous. As you know the triage area is one of the most rigorous in our curriculum. We discussed several strategies in order to successfully remove you from remediation. We discussed some modifications in your approach to patients, attendings and nurses. We discussed your approach to diagnosis and we discussed creating a more intense education curriculum. As you know, I assigned you a mentor, Dr. Patruno, two months ago when we recognized your challenges in our program. I would like you to continue to meet with Dr. Patruno. I will ask that you run all the patients that you see in the triage area past the attending in the triage area that day or on call. I am going to ask that the faculty attending go over the patient, review the exam, and counseling of the patient. This is an effort to teach and review with you the critical thinking process that occurs in a seasoned faculty member.

As we have discussed, I look forward to you successfully completing your remediation and ultimately completing or program. You are a dedicated, energetic, and endearing individual who I think can use those personal attributes to your advantage.

Sincerely,

Anthony C. Sciscione, D.O.
Residency Program Director
Obstetrics and Gynecology

ACS/slk

Cc:   Dr. Brian Little

Margolis Edelstein
Zechman, E. v. Christiana Care
0053

A-24

**CHRISTIANA CARE HEALTH SERVICES**
**Department of Obstetrics and Gynecology**
**Division of Education**

**MEMORANDUM**

**December 13, 2002**

**TO:**      **OB/GYN Attendings**

**FROM:**   **Anthony Sciscione, D.O.**
**Associate Director, Ob/Gyn Residency Program**

**RE:**      **Ellen Zechman, MD**

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

In order to intensify the educational process and enhance the critical thinking skills of Dr. Zechman, I am asking that from this time forward that Dr. Zechman review every patient she sees in the triage area with the attending faculty on the triage unit or on call. I would ask that the faculty attending would review the history, physical, and counseling with Dr. Zechman concentrating on critical thinking skills and increasing knowledge. I know this will not be easy and will substantially increase your time commitment. I can promise you in the end, through all of our efforts we will have a well trained Obstetrician-Gynecologist in Dr. Zechman, that we can be proud graduated from our program.

If you have any questions please do not hesitate to contact with me. With this letter I send my best regards.

ACS/slk

Cc: Dr. Brian Little

D0588
CONFIDENTIAL

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

FILED

Civil Action No.

4:03-CV-16-H(3)

JAN 31 2003

DAVID W. DANIEL, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP. CLERK

|  |  |  |
|---|---|---|
| ELLEN HUFFMAN-ZECHMAN, M.D., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| PITT MEMORIAL HOSPITAL, and | ) | |
| THE STATE OF NORTH CAROLINA/ | ) | |
| EAST CAROLINA UNIVERSITY, | ) | |
| BRODY SCHOOL OF MEDICINE, | ) | |
| Defendants | ) | |

The Plaintiff, complaining of the Defendant, avers:

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA") for employment discrimination. Plaintiff invokes this Court's jurisdiction pursuant to 29 U.S.C. sections 623(a), et seq., 42 U.S.C. sections 12112(a), et seq., and 28 U.S.C. section 1343(4). The Plaintiff also claims pendent and ancillary jurisdiction of related state law claims as more fully set forth herein.

2. The unlawful employment practices alleged below were committed within the Eastern Division of the Eastern District of the State of North Carolina.

## PARTIES

3. The Plaintiff is a white female citizen of the United States and a resident of Craven County, North Carolina in the Eastern District of North Carolina. She is a physician licensed to practice medicine in North Carolina. She has been board certified

I

in the General Practice of Medicine and Surgery since November 3, 2000. (see attached Exhibit A)

4. The Defendant East Carolina University Brody School of Medicine ("ECU") is a state entity organized under the laws of the State of North Carolina, and is located in Pitt County, North Carolina.    The Brody School of Medicine trains primary care physicians for Eastern North Carolina.    Upon information and belief, ECU regularly employs 15 or more employees and is an entity subject to the mandates of the ADEA, the ADA and relevant state laws prohibiting discriminatory employment practices.

5. The Defendant Pitt Memorial Hospital ("Pitt Memorial") is part of the University Health Systems of Eastern Carolina, and is located in Pitt County, North Carolina.    Upon information and belief, Pitt Memorial regularly employs 15 or more employees and is an entity subject to the mandates of the ADEA, the ADA and relevant state laws prohibiting discriminatory employment practices.

6. At all times relevant hereto, Peter J. Kragel, MD was the Interim Dean at the Brody School of Medicine, and Edward Newton, MD was Chairman of the Department of Obstetrics and Gynecology at the Brody School of Medicine at ECU.  Both of these individuals represented both Defendants in the role of employment selection for the residency position.

## ADMINISTRATIVE PROCEDURES

7. The Plaintiff filed a *pro se* charge of employment discrimination against the Defendant with the Raleigh District Office of the Equal Employment Opportunity Commission ("EEOC") in or around August, 2002. (See attached Exhibit B) Plaintiff alleged that the Defendant discriminatorily refused to hire the Plaintiff due to her age and

2

A-27                                    ECU0050

disability. She reported various instances of discriminatory and derogatory comments addressing such subjects as her age and sex during the application process and interviews for employment as a resident at ECU.

8. The Plaintiff received a "Notice of Right to Sue" concerning her charge by letter from the EEOC dated October 31, 2002, which entitled her to institute a civil action within ninety (90) days of her receipt of said Notice. The Plaintiff received the Notice on or about November 2, 2002. A copy of the Notice of Right to Sue is attached hereto as Exhibit C.

## FACTUAL ALLEGATIONS

9. The Plaintiff applied for a residency position with ECU, Department of Obstetrics and Gynecology that was scheduled to start on July 1, 2002.

10. In applying for the residency position, the Plaintiff presented her credentials including her full licensure as a North Carolina physician with one year of OB/Gyn training, and excellent references. She graduated from ECU in 1994 and completed an internship in pathology. The Plaintiff met the stated qualifications for the residency position for which she applied.

11. The Plaintiff completed applications to be considered for the residency position. In addition to a National Resident Application Service form, she was required to complete another application (House Staff Data Form) on which she was compelled to give her date of birth prior to interviewing. A sample of the House Staff Data Form is attached hereto as Exhibit D.

12. The Plaintiff interviewed for the residency position in January, 2001 and November, 2001. During both interviews with ECU staff residents, the Plaintiff was

3

repeatedly asked such questions concerning her age as: "How do you feel about taking orders from residents so much younger than you?;" and "Will you be able to respect the chain of command?;" "Are you going to be able to take orders from people younger than you.?" The Plaintiff was also questioned about her family status and how she was going to "pull call nights" with young children.

13.    During the January, 2000 interview with ECU resident Anessa Lewis, MD, the Plaintiff was questioned about who would care for her baby on call nights when the Plaintiff would be required to stay at the hospital.

14.    During the November, 2001 interview, Dr. Edward Newton attempted to discourage the Plaintiff from pursuing her OB/Gyn career by commenting "Why do you want to do this? You should stay home with your husband and children."

15.    After the Plaintiff's November, 2001 interview, one of the doctors, Dr. Dombrowski wanted to offer the Plaintiff a residency position. He requested that the Plaintiff speak with Dr. Newton further about the residency employment. However, Dr. Newton declined and would not meet with the Plaintiff.

16.    Because of the Plaintiff's past relationship with ECU, the Defendants were also privy to the Plaintiff's physical disability of Mixed Connective Tissue Disease, an chronic auto-immune disorder.

17.    The Plaintiff was notified on March 18, 2002 that she was not chosen for the residency position. The Defendants has accepted candidates with less qualifications for residency, and has refused to allow the Plaintiff to have residency training at ECU.

18.    The Plaintiff was refused employment for the residency position on the basis of her age, disability and family status.

4

ECU0052

19.    The Defendants' discriminatory conduct against the Plaintiff has forced her to seek her Obstetrics and Gynecology training at other out-of-state institutions because she had no other options for such training in eastern North Carolina. She is well established in eastern North Carolina and now commutes long distances to obtain the training she could receive in Pitt County.

20.    The effect of the discriminatory hiring conduct practiced by the Defendants as alleged has been to limit and discriminate against the Plaintiff in ways which unlawfully deprived her of employment opportunities because of her age in violation of the ADEA, ADA and relevant state laws.

## FIRST CLAIM FOR RELIEF

21.    The Plaintiff realleges and incorporates by reference Paragraphs 1 through 20 as if fully set forth at length herein.

22.    The Defendants unlawfully discriminated against the Plaintiff by their refusal to hire her for the residency position, despite her qualifications, on the basis of her age in violation of ADEA.

23.    As a result of the Defendant's wrongful, arbitrary and discriminatory hiring practices, the Plaintiff's ability to obtain comparable employment in her field in eastern North Carolina has been substantially impaired, and the Plaintiff has been forced to seek such employment outside the state of North Carolina. In addition, the Plaintiff has suffered economic loss, humiliation, mental and emotional stress from commuting long distances and leaving her family to obtain the medical training she could receive from ECU.

## SECOND CLAIM FOR RELIEF

5

A-30                                                    ECU0053

24.    The Plaintiff realleges and incorporates by reference Paragraphs 1 through 23 as if fully set forth at length herein.

25.    The Defendants unlawfully discriminated against the Plaintiff by their refusal to hire her for the residency position, despite her qualifications, on the basis of her disability in violation of ADA.

26.    As a result of the Defendant's wrongful, arbitrary and discriminatory hiring practices, the Plaintiff's ability to obtain comparable employment in her field in eastern North Carolina has been substantially impaired, and the Plaintiff has been forced to seek such employment outside the state of North Carolina.  In addition, the Plaintiff has suffered economic loss, humiliation, mental and emotional stress from commuting long distances and leaving her family to obtain the medical training she could receive from ECU.

## THIRD CLAIM FOR RELIEF

27.    The Plaintiff realleges and incorporates by reference Paragraphs 1 through 26 as if fully set forth at length herein.

28.    The Defendants' wrongful, arbitrary and discriminatory conduct as alleged constitute impermissible denial of employment and abridgement because of the Plaintiff's age, sex and/or disability, which violates the public policy of North Carolina as stated in the Equal Employment Practices Act, N.C.G.S. section 143.422.1, et seq.

29.    As a result of the Defendant's wrongful, arbitrary and discriminatory hiring practices which violates North Carolina's public policy pursuant to the said statute, there is implied a cause of action in favor of the Plaintiff with respect to the Defendants' conduct, and the Plaintiff is entitled to relief as a result of such violations.

6

ECU0054

WHEREFORE, the Plaintiff prays that the Court enter an Order providing as follows:

(a)    That the Plaintiff have and recover from the Defendants a immediate position of residency status with ECU at a just rate of pay and benefits;

(b)    That the Plaintiff have and recover from the Defendants compensatory damages for her damages, economic losses and loss of benefits in an amount to be shown at trial;

(c)    That the Defendants be taxed with the cost of this action, including expert witness fees and reasonable attorney's fees for the Plaintiff;

(d)    That the Court retain jurisdiction over this action to assure compliance with the Orders of this Court and with the ADEA and the ADA, and require the Defendants to file such reports as the Court may deem necessary to evaluate such compliance;

(e)    That all issues of fact be tried to a jury; and

(f)    That the Court grant such additional and further relief as it may deem just and proper.

This the 30th day of January, 2003.

Sharon Bey-Christopher, N.C. Bar No. 24955
Attorney for Plaintiff
Harley & Bey-Christopher, PLLC
P.O. Box 3848
Durham, NC 27702-3848
Telephone: 919-956-9192
Facsimile: 919-956-5241

7

ECU0055

A-32

REDACTED

**A-33**

1

D0582
CONFIDENTIAL

REDACTED

D0607
CONFIDENTIAL

REDACTED

REDACTED

REDACTED

REDACTED

D0601
CONFIDENTIAL

REDACTED

REDACTED

D0602
CONFIDENTIAL

REDACTED

REDACTED

D0616
CONFIDENTIAL

REDACTED

D0617
CONFIDENTIAL

REDACTED

D0618
CONFIDENTIAL

**CHRISTIANA CARE**
HEALTH SERVICES

### Resident Agreement of Appointment

This Agreement is made and executed by and between Christiana Care Health Services (hereafter referred to as Christiana Care) and **Ellen H. Zechman, MD** (hereafter referred to as Resident) for a position as a **2nd year Obstetrics/Gynecology** Resident, and shall be effective from **1 July 2003** through **30 June 2004.**

**I. Mutual Responsibilities:** The Resident and Christiana Care mutually agree to: 1) fulfill the educational requirements as set forth by the accrediting body of the graduate training program to which the resident has been admitted. Specifically: <u>Allopathic Programs:</u> Accreditation Council for Graduate Medical Education (ACGME); <u>Dental and Oral Maxillofacial Programs:</u> American Dental Association (ADA); <u>Osteopathic Programs:</u> American Osteopathic Association (AOA); <u>Podiatric Programs:</u> Council of Podiatric Medical Education (CPME); <u>Pharmacy Programs:</u> American Society of Hospital-System Pharmacists (ASHP), 2) fulfill the established program of each individual residency program to which the Resident is accepted, and 3) abide by the applicable portions of the Medical-Dental Staff Rules and Christiana Care rules, regulations, policies, and procedures that may be changed or amended from time to time.

**II. Resident Responsibilities:** The Resident agrees to:

a. Fulfill the patient care requirements of the graduate training program and meet expected competencies of their program. The resident further agrees to provide safe, effective, efficient, and compassionate patient care as assigned or required under the circumstances and delineated by the accrediting body as listed in Section I, the established residency program of each Department to which the Resident is assigned, the Resident's department, as well as the department to which he/she will rotate, and the applicable portions of the Medical Dental Staff Rules and Christiana Care rules, regulations, policies, and procedures which may change or be amended from time to time.

b. Perform his/her duties as required including but not limited to the completion of medical records in a timely fashion for the duration of this Agreement as defined in Christiana Care policies.

c. Meet the professional licensing requirements of the State of Delaware to be licensed to practice as required by the specific specialty.

d. Present at all times a proper appearance and display a professional cooperative attitude towards patients, visitors, Christiana Care employees, fellow Resident members, and Medical-Dental Staff. This will include participation in the CCHS program of Unsurpassed Excellence.

e. Abide by Christiana Care rules and regulations, policies and procedures, including but not limited to requirements for pre-employment physicals (including drug screen) and adequate immunizations, infection control, quality improvement, risk management, and stress management.

D0422
CONFIDENTIAL

f. Abide by the Christiana Care policy regarding sexual harassment as outlined in Section III of the Resident Manual.

g. Abide by all other policies and procedures as outlined in the Resident Manual, including but not limited to:
   - Fair Hearing and Academic Appeal [Grievance Procedures],
   - Impaired Physician [including substance abuse].
   - Psychiatric issues,
   - Resident Stress,
   - Leaves of Absence, both Professional and Parental.
   - Duty Hours

h. Resident will cooperate with CCHS Risk Management and Legal Affairs in the review, investigation, and adjudication of all complaints or other legal actions brought against CCHS or its agents. This provision shall survive the termination of this Agreement of Appointment.

**III. Christiana Care Responsibilities:** Christiana Care agrees to:

a. Assure that the educational programs of hospitals used for affiliated and integrated training meet the criteria for Board certification in the respective specialty or specific regulations of the program.

b. Pay Resident a stipend at the annual rate of $41,891.20. Such stipend shall be paid bi-weekly in equal installments. Christiana Care shall have the right to withhold any taxes, social security contributions, or any other sums required to be withheld by law or requested to be withheld by the Resident.

c. Maintain professional liability insurance as outlined in Section II of the Resident Manual covering Resident while he/she is performing services pursuant to this Agreement. Resident acknowledges that <u>only</u> activities prescribed and supervised in the education/training program of the Resident shall be covered. Insurance is designated as "occurrence", with tail.

d. Assist Resident in obtaining a State of Delaware Limited Institutional License as required by the accrediting bodies listed in Section I.

e. Provide and maintain suitable on-call quarters for nights on duty. Quarters will be assigned and access provided by the program through which Resident is rotating.

f. When assigned to night call Resident will be provided an evening meal and the following morning meal at no charge. This does not include any meals that are part of normal working hours.

Resident Agreement of Appointment
2

D0423
CONFIDENTIAL

g. Provide and launder prescribed uniforms and lab coats as outlined in Section I of the Resident Manual.

h. Provide benefits to Resident as outlined in Appendix A. These benefits or the eligibility conditions may be changed to conform to future legal requirements and/or future Christiana Care Human Resources policies. The administration of benefits is governed by the Plan documents, hospital policies, and current legislation.

i. Provide counseling and support services as described in Sections III and IV of the Resident Manual.

**IV. Duty Hours Requirements and Off-Duty Activities:** Residency is a full time position with time devoted to both learning and supervised patient care. Limits on duty hours are placed on Residency programs to ensure optimal learning, safe patient care, and time for resident personal and family obligations. Resident recognizes that remunerative professional activities outside the scope of the residency program are considered not to be in the best interest of the Resident or Christiana Care. Christiana Care does not encourage nor condone any off-duty professional remunerative activities that might interfere with the Resident's performance in, or obligations to the CCHS Residency Program. Christiana Care does not provide malpractice for these activities. Resident shall not participate in any outside remunerative activity in the PGY1 year. In the PGY2 year and above, Resident must have prior written permission of the Program Director to undertake outside professional remunerative activities. Resident must provide regular, written documentation of all outside professional remunerative activities or Program Director; failure to do so will result in immediate suspension. Residents on remediation, suspension, or after failure to promote shall not undertake any outside professional remunerative activities. Resident will abide by the Moonlighting Policy as outlined in Section IV of the Resident Manual. Each CCHS Residency Education Committee may set policies which are more restrictive. Resident will cooperate with CCHS and any accreditation or regulatory body requiring information about outside professional remunerative activities.

**V. Reappointment**

Upon the recommendation of the Department Education Committee and Program Director, fulfillment of all licensure and regulatory requirements, and approval of the Graduate Medical Education Committee, Resident will be offered a position at the next level of graduate medical training for the upcoming academic year. This offer will be made no later than eight months after the start date of this contract, and will be contingent on the successful completion of the present year of training, as determined by the Department Education Committee, the Program Director, and the Graduate Medical Education Committee. Resident may use the Fair Hearing and Academic Appeal Process to appeal any decision to not re-appoint Resident for upcoming year. Should any Fair Hearing and Academic Appeal process extend past the termination date of this contract, Christiana Care has no obligation to continue to employ Resident but will complete the Fair Hearing and Academic Appeal process according to the current procedures.

Resident Agreement of Appointment
3

A-44

D0424
CONFIDENTIAL

## VI. Termination

### A. By Resident:

1. The Parties agree that if it should become necessary for the Resident to terminate the Agreement before its expiration date, the Resident will provide 30 days written notice.

### B. By Mutual Consent:

1. The effective date of this Agreement may be modified or terminated at any time by mutual written consent of the Resident and the Program Director.

### C. Dismissal for Academic Reasons and Summary Dismissal:

1. A final determination to summarily dismiss or dismiss for academic reasons (as defined in the Fair Hearing and Academic Appeal Policy) shall result in a termination of the Agreement of Appointment.

**VI.** **Applicable Law:** The laws of the State of Delaware shall govern This Agreement.

**VII.** **Waiver of Breach:** The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

**VIII.** **Severability:** In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not affect the remainder of this Agreement, which shall remain in full force and effect and enforceable in accordance with its terms.

**IX.** **Nondiscrimination:** Christiana Care agrees (I) not to discriminate against any of its employees or applicants for employment because of race, color, religion, sex, or national origin, and further that it will take affirmative action to ensure that applicants are employed and that employees are treated during employment without regard to race, color, religion, sex, or national origin and (2) to comply with all provisions of Executive Order 11246 of September 24, 1965, the rules, regulations, and relevant orders of the Secretary of Labor, and any other applicable laws.

**X.** **Term:** The term of this agreement is for one year.

**XI.** **Entire Agreement:** This Agreement constitutes the entire Agreement between the parties and supersedes all previous agreements. Any amendments to the Agreement must be in writing and executed by the parties hereto.

Resident Agreement of Appointment

4

D0425
CONFIDENTIAL



**By signature it is acknowledged that the Resident has read the entire Agreement prior to its execution.**

Ellen H. Zechman, MD
Resident

6/27/03
Date

Lamar Ekbladh, MD
Program Director

6-30-03
Date

Brian W. Little, MD, Ph.D.
Vice President, Academic Affairs and Research

7/1/03
Date

Resident Agreement of Appointment
5

A-46

D0426
CONFIDENTIAL