

## Benefits Plan for Residents

---

**The Benefits Plan for the Christiana Care Health Services, Inc. provides the following benefits at no cost to CCHS Residents:**

| | |
|---|---|
| **Paid Leave:** | As defined in the Academic Affairs "Paid Leave Policy" |
| **Group Health Insurance*:** | Mid Atlantic Advantage "Plan A" (in State)<br>Care First Plan E (out of State) |
| **Group Dental Insurance*** | Standard Plan |
| **Group Life and AD&D Insurance*:** | (1X Salary) |
| **Long Term Disability Insurance*:** | Plan "A" |

* Effective the first day of the month following employment, health and dental include coverage of eligible dependents.

**Optional Benefits:**

Optional benefits available requiring contributions by participants include:

- Tax Deferred Annuity/Matching Contributions Program
- Savings Bond Program
- Credit Union
- Dependent Care Reimbursement Program
- Health Care Reimbursement Program
- Additional Life, Health and LTD Insurance options under CCHS Flexible Benefits Program

Please see Benefits Booklets for more detailed information relative to the above. You will receive a Benefit Booklet under separate cover.

Subj: **Fwd: residency abuse**
Date: 6/19/2003 3:14:01 PM Eastern Daylight Time
From: ELLENZECHMAN
To: poc@acgme.org

I tried to send this yesterday, there was an error in the address.

Forwarded Message:
Subj: **residency abuse and discrimination**
Date: 6/18/2003 4:19:21 PM Eastern Daylight Time
From: ELLENZECHMAN
To: poc@acgme/org

Dear Dr. O'Connor,
I am contacting you concerning a long-standing problem at Christiana Care Hospital,Newark DE, Ob/Gyn residency program and am asking that you review the process by which the residents are evaluated and promoted. This was an issue at the recent Residency Review of the Ob/gyn teaching program and contributed to the programs pending probationary status. I am asking that you keep my name confidential because I am terrified that there will be severe retribution against me for speaking out and it would be the end of my Ob/Gyn career.

I transferred to the Christiana Care Ob/Gyn residency in July 2002 after completing a non-continuing PGY-1 in another institution. When I interviewed for the position I made it perfectly clear that my previous program was much slower paced and that my OR experience was limited because 1st year residents manned the Labor Floor and had minimal operating opportunity until 2 and 3 rd year. I was eager to join Christiana since I will be returning to practice in rural North Carolina, where OB/GYN's are desperately needed. I was offered the PGY-2 position and accepted.

I was immediately plugged ino the open postion and worked as hard as possible.
All of my on call time and 3/4 of my year consists of being in a 10 exam room female emergency room Ob/Gyn triage. This is a high volume area at times 30 to 40 people coming in for various reasons in a 12 hour shift. For evenings, weekends, and holidays the 2nd year Ob resident is the only physician around. No direct supervision seeing patient with an attending. The majority of the patients are private patients, and not "Service" attending. We see these patients alone, evaluate and treat the patients with only telephone guidance from the attending who never even sees the patient. There has been several occasions when there was a serious problem... Saturday before Easter when a private patient came in with a 35 week fetal demise, and in DIC, the Teaching attending was in an Emergency C-section for a private patient ( Private attending not in house, not quickly available) and there was absolutely no one to help me. It took 40 to 45 minutes for an attending to finally show up for this patient. Meanwhile I had 10 patients waiting to be seen with no additional help.
Now that the PGY-2 year is over, I have been told that I am not being promoted because I am "behind my PGY -2 colleagues". I am not being offered a PGY-3 contract, but am offered a PGY -2 contract.
I feel that they brought me into the program to staff there high need area, and failed to provide the training needed to advance my skills in this new program. Teaching programs should be expected to fulfill their obligations to their residents by teaching them, not using them as unsupervised slave laborers.
Additionally all the residents are expected to admit all private patients, and write daily notes on these patient. We are being used as slave labor for the private physicians so that they do not have to come in and see their own patients. With the high volume at Christiana Care, and small amount of residents, this is becoming impossible. We are even expected to stay after our new work hours to write notes on private patients. Of course this is not officially written, but we are harassed by the private doctors if we do not get it done. The private physicians on the Residency Review Committee are particularly guilty of using us as their personal slaves.

Additionally through out my year at Christiana, I was continuously "pulled" from my Gyn rotation to fill in either at Ob/triage or L&D and denied the opportunity to advance my surgical skills. Then in turn I am being criticized for not having the operating skills of my counterparts.
I am aware this has happened to a previous resident that transferred in as a PGY-2 as well, Rita Vinod, now graduating this year. She reports being discriminated against as well, so this apparently is an ongoing problem. I am an older resident 46 yrs old and have a disability ..Rheumatoid Arthiritis, I feel I am being targeted for this abuse secondary to being "nontraditional" as well as having transferred into the program.
Please check into how Christiana uses their Ob residents as slaves for the private physicians, it is time for this

type of teaching and "paying your dues" to end and programs to become teaching institutions. It is especially important in view of the reduced interest in Ob/Gyn.
Once again, I am begging you to not reveal me as a source, I am sure they would seek out any reason possible to get rid of me. I am scared, but I cannot keep my mouth shut and see this abuse continue.
Ellen Zechman, MD

(2)

July 22, 2003

Problems: Told that I was "on call This Saturday, 7/26, then again Sunday next week Aug 3rd. morning. I don't see the Children for 3 weeks Jim is unable to come up 2° to Staffing problems with his clinic." I really lost it when Sandi told me this. I'm physically exhausted and now I don't see my children for 3 weeks... it was supposed to get "better" call-wise after July - nothing has changed, it has gotten worse - less weekends free to see my family - This is worse than I imagined it could be. I don't know if I can hold out.

July - 23 - 2003

Good Day. Surgical Training Skills for all residents in AM. Clinic with Dr. Kaminsk in Wilmington Afternoon - enjoyable Z

Margolis Edelstein
Zechman, E v. Christiana Care
0853

# Ellen Zechman, MD

*1608 Tryon Road*
*New Bern, NC*
ELLENZECHMAN@aol.com

July 23, 2003

Dear Dr Ekbladh,

As you know, I am committed to doing whatever is necessary to complete this program and become a Board Certified in OB/Gyn so that I may return to North Carolina and practice in my hometown area that is medically underserved.

Unfortunately, as you know I have a disability, Mixed Connective Tissue Disease, which has both symptoms of Lupus and Rheumatoid Arthritis. My condition is very controllable, with rest and occasional medications. One of the major manifestations of these autoimmune diseases in fatigue and with our busy work schedule, I am having problems in this area.

I am asking for some creative scheduling to help me maintain optimal health in addition to meeting my requirements as a resident.

I am asking for additional days off to be worked into the schedule to allow 2 periods of 72 hour breaks in a 4-week work cycle. This time would include the normal time off, but adding an additional day to the scheduled break. Since the Resident manual states that we are allowed "sick days " the days that do not come under vacation, could come under the "sick day" or simply unpaid excused days since they are medically needed. I have tried to break up my vacation to allow for as many of these breaks as possible prior to making this request.

These days would not need to disrupt the regular weekend schedule. As an example. If I am scheduled to work Friday night and Sunday, technically I am working Friday, Saturday (midnight until 8:30am) and Sunday. I am requesting that I be allowed a 72 hour break the following week. If I am scheduled for working on a Saturday, then having the 72 hours after that off...Sunday, Monday and Tuesday. This would allow minimal disruption of the work schedule. This could include a normally scheduled weekend (usually we get one or two full weekends off a 4 week cycle) but tacking on a Monday or Friday to give the 72 hour break. I have already tried to break up my vacation to allow for as much of this as possible.

I sincerely wish to successfully complete this residency program, I think you realize that by now. I am very grateful for all the efforts that have been made to help me achieve this goal.

Sincerely,

Ellen Zechman, MD

D0119
CONFIDENTIAL

# REQUEST FOR DISABILITY ACCOMODATION

## I. To Be Completed By Employee

Name Ellen Zechman Date 7/24/03

Job Title Resident Dept. OB/Gyn

Location: (Christiana) Wilmington Rcklnd Rd Riverside HealthCare Cntr VNA Other Specify:

Nature of Disability Mixed Connective Tissue Disease

Date of Diagnosis 1996

Accommodation Requested Additional days off for longer Rest Breaks with schedule

Treating Physician (Name, Address, Telephone Number) David Frasier

## MEDICAL RECORDS RELEASE

I, (Ellen Zechman), hereby request and authorize that *Employee Health Services,* as a representative of **Christiana Care Health System,** my employer contact my physician to discuss the nature and extent of my disability and any accommodations necessary for continued performance of the essential functions of my job. I also authorize release of my medical records to the extent that they are relevant to my request for an accommodation.

Records only to my Connective Tissue Disease. Records only relating to my condition the last 3 ye

Employee Signature [signature] MD Date 7/24/03

## I. TO BE COMPLETED BY MANAGER

Major Job Responsibilities:
(Use Job description/performance standards to determine essential job functions.)

- See attached - "Essential job functions for obstetrics/gynecology Residents"
-
-
-
-
-

Mgr. Signature [signature] Date 7/23/03



Accreditation Council for Graduate Medical Education

515 N. State St., Suite 2000
Chicago, IL 60610
(312) 464-4920
FAX: (312) 464-4098

RECEIVED
AUG 04 2003
DEPT. OF OB-GYN

July 28, 2003

Lamar Ekbladh, MD
Acting Program Director, OB/GYN Residency Program
Christiana Care Health system
4755 Ogletown Stanton Road
P O Box 6001
Newark, DE 19718

Dear Dr. Ekbladh:

The ACGME has received a complaint concerning the Christiana Care Health Services Obstetrics-Gynecology Program in Newark Delaware. The complainant has requested confidentiality.

In order that we may have both sides of the story, please provide a detailed response from your perspective to the allegations, as well as any documentation that would demonstrate compliance.

The following Program Requirements were allegedly violated:

**Program Requirements for Residency Education in Obstetrics and Gynecology II.4.a-d**

a. *Supervision of residents in obstetrics and gynecology is required to ensure proper (1) quality of care, (2) education, (3) patient safety, and (4) fulfillment of responsibility of the attending physicians to their patients. These considerations must be integrated with the goal of independent competence in the full range of obstetrics and gynecology at the completion of residency. This implies a graduated and increasing level of independent resident action. Each program director must balance quality assurance for patient care, resident education, and independent resident action. The level of resident supervision should be commensurate with the*

Member Organizations

American Board of Medical Specialties
Suite 404
1007 Church Street
Evanston, IL 60201

American Hospital Association
One North Franklin
Chicago, IL 60606

American Medical Association
515 North State Street
Chicago, IL 60610

Association of American Medical Colleges
2450 N Street N.W.
Washington, D.C. 20037

Council of Medical Specialty Societies
Suite M
51 Sherwood Terrace
Lake Bluff, IL 60044-2232

*amount of independent function that is designated at each resident level. Residents, as well as faculty, may provide supervision.*

*b.* *On an obstetrics and gynecology service, adequate supervision requires the 24-hour presence of faculty in the hospital except when residents are not assigned in-house call responsibilities. Faculty must be immediately available to the resident if clinical activity is taking place in the operating rooms and/or labor and delivery areas. Faculty must be within easy walking distance of patient care units. Clinical services provided in ambulatory (office) locations require on-site supervision. Open and generously used lines of two-way communication are important and should be encouraged.*

*c.* *If the program director judges that the size and nature of the patient population does not require the 24-hour presence of residents and faculty, this situation must be carefully defined and reviewed and should include information about the nature of the hospital, the patient population, the nature of attending staff, and the geographic and climatic situations. Exceptions require prior written approval from the RRC.*

*d.* *Supervision of residents is a responsibility of the program director and teaching staff. It is the responsibility of the institution sponsoring a residency program to establish oversight to ensure that programs meet the supervisory provisions of these Program Requirements.*

It is alleged that for evenings, weekends, and holidays a junior resident is the only physician in-house. There is no direct supervision by an attending. The majority are private patients, and residents see these patients alone. They evaluate and treat the patients with only telephone guidance from the attending, who never sees the patient.

**<u>Program Requirements for Residency Education in Obstetrics-Gynecology II.5.</u>**

*Complete management of a patient's care under adequate supervision should be considered the highest level of residency education.*

**<u>Program Requirements for Residency Education in Obstetrics-Gynecology II.C.1.</u>**

> *...Clinical involvement alone does not constitute an educational experience. The provision of adequate supervision, education, individual evaluation, and administrative support is critical. With this, it is of utmost importance that each resident have sufficient independent operative and clinical responsibilities to prepare for practice in this specialty.*

It is alleged that residents are used for service and that the program has failed to provide the training needed to advance their surgical skills. Allegedly, junior residents spend much of the year in OB/GYN triage. The triage is a high volume area and residents treat 30 to 40 private patients within a 12-hour shift. Residents are pulled from the GYN rotation to fill in at OB/triage or L&D.

Residents view themselves as "unsupervised slave laborers," for the private physicians. It is alleged the residents write daily notes on the private patients who are not seen by their physician. If they do not complete the notes, they stay beyond normal duty hours to complete the task or else suffer harassment by the private doctors.

Please provide a response to the above by August 28, 2003. The response must be signed by the Chair of the Graduate Medical Education Committee or its equivalent.

Sincerely,

Marsha A. Miller

Marsha A. Miller
ACGME Complaints Officer
312-755-5041
mmiller@acgme.org

cc: David C. Leach, MD, ACGME Executive Director
Marvin R. Dunn, MD, Director, RRC Activities
Paul O'Connor, PhD. Executive Director RRC for Obstetrics and Gynecology
Robert J. Laskowski, MD, MBA, President & CEO, Christiana Care Health Services, Inc
Brian W. Little, MD, PhD, Vice President, Academic Affairs and Research



Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

July 30, 2003

**RE: Ellen Zechman, MD**

This is to acknowledge that I am aware that there will be a mid-quarter RRC meeting on August 18th, 2003. The Departmental Education Committee (RRC) will meet to review the progress during the last six weeks of my remediation / special rotation. At which time the committee will determine one of the following:

1). Proceed with the remediation / special PGY2 rotation
2). Mainstream into a PGY2 position
3). Termination
4). Progress into a PGY3 position

Ellen Zechman, M.D. (signature)

Lamar Ekbladh, M.D. (signature)

Margolis Edelstein
Zechman, E. v. Christiana Care
0050

**Collins, Vicky**

**From:** Zechman, Ellen H.
**Sent:** Friday, August 01, 2003 10:09 AM
**To:** Ekbladh, Lamar MD
**Cc:** 'zechman@coastalnet.com'
**Subject:** RE: re rounds

**Importance:** High

I do and I have been when I am free or easily available. I find it rather interesting that other residents that are not assigned to the service on that day don't get singled out for this issue.
Why am I all of a sudden being singled out for this as some big issue ? Did the person bringing this up as an issue bother to mention that the other residents that are not assigned to OB rounds are not at morning OB rounds or evening check out rounds? That person's not on the
Gyn service do not attend the Gyn rounds unless they just finished a case and pop in?
Who is suddenly bringing this up as an issue, and why am I being singled out?
Also Please review the August Call schedule. Please note that there are 2 PGY-2's, an off service intern, PGY-3 and PGY-4 on call. So where does this put my "learning experience"?
Am I going to be able to participate in decisions to better prepare me for duties as a PGY-3 or am I going assigned the PGY-1 duties. Do you see how this plan is actually detrimental to my learning progress ? What was said to be the plan on paper is not being enforced on the floors.
I was supposed to get OR time with the teaching attending, this has not happened. Just last week I was bumped out of surgery with my assigned attending ..he even mentioned that to you.
I need your help in this, please I have been through enough with this..... help me. I do not want to give up my goal of becoming a OB/GYN, and OB/Gyn's are desperately needed in NC. This remediation plan is singling me out...making me an outcast with my fellow residents. I am doing everything I can to fulfill the requirements put before me, but the plan that was proposed is not being enforced on the day to day floor level.
I did not do anything wrong to deserve this.
Please....I am begging you, Help me.

-----Original Message-----
**From:** Ekbladh, Lamar MD
**Sent:** Wednesday, July 30, 2003 12:57 PM
**To:** Zechman, Ellen H.
**Subject:** re rounds

Ellen, I understand there is some issue as to whether you should attend morning and/or evening rounds. Although not required, all residents are encouraged to attend any potential learning experience. Some may attend and some not largely depending on their rotation and where they are. Feel free to attend or not depending on your own feeling. I would encourage you to take advantage when possible.

File Note – August 7, 2003

I had a meeting with Dr. Zechman to discuss how she was doing and to discuss her leaving for North Carolina to get her medical evaluation from Dr. Frazier. She expressed that she was still very, very stressed and began crying and said she was crying in her pillow each night and waking up to a wet pillow. I offered to help her set up arrangements for counseling or more intensive medical evaluation. She did not want this at this time. She continues to explain how mortified she is at her current situation of repeating the 2nd year and does not know how she could possibly remove that stress. She feels that this stress is hindering her ability to perform and show what she can really do. I advised her that when we get the medical report from her physician we will take the next steps to looking at how we can potentially accommodate any medical handicaps.

File Note – August 13, 2003

Dr. Zechman came into my office and threw a copy of the green book towards me and stated that she was "throwing the book at me". I asked her what this meant and she turned to the part in the special requirements which states that "individuals with special needs, special rotations can be made and that every resident doesn't have to do the same thing". I pointed out to her that we were indeed doing that at this time, giving her a very special rotations to meet her needs and that these indeed are very different from the other residents. She again stated how stressed she was and how humiliated she was with her current situation and that other residents, nurses and the staff are all looking at her in a negative fashion. I reiterated to her that she might want to see somebody about the stress that she feels and she did not feel that she needed to see anyone. I expressed to her that she first needs to totally accept the fact that she is repeating the 2nd year and that until she does so, with or without help, the amount of stress she feels will not disappear.

The Greenbrier

David
Dr. Frazier 8-11-03 1:45 p –

10 yrs case

Unspecified CTD – intermittent flares

Chronic pain – ulcers, pleurisy, diffuse fatigue

Extra time off might help fatigue

Had no specific recommendation of how that time should be arranged.

9105770177

Telephone call with Dr. David Fraser – August 11, 2003 (1:45p.m.)

Today I had a telephone conversation with Dr. Fraser concerning Ellen Zechman. He states that Dr. Zechman has been under his care for approximately 10 years and that she has an unspecified connective tissue disorder of which have intermittent flares. She can go many years without any problems and then for a while may see him on a regular basis. He also stated that she had a chronic pain syndrome, a diagnosis that she refuses to accept with her having recurrent ulcers and pleurisy. He also states that she will complain diffuse fatigue.

We discussed what might help her handle the stresses and fatigue of a residency program; he stated that extra time off might help the fatigue but he had no specific recommendation of how that time should be arranged. He stated that he suspected that no matter what time we gave her off she might request more.

At the end of the conversation he stated that his written report would be faxed to us.

## II. TO BE COMPLETED BY PHYSICIAN

A. Please identify physical/mental limitations caused by employee's disability.

[illegible handwriting]

B. What essential job responsibilities are affected by employee's disability, and to what degree is employee's performance of the essential function (s) limited? ***(Please refer to Section II for list of employee's major job responsibilities.)***

(as above)

C. Duration of Disability [illegible handwriting]

1. Is employee's limitation (s) permanent? YES or NO ?
2. If limitations are not permanent, how long will they persist?

as above, [illegible handwriting]

D. Please suggest any accommodation, (please be specific) that will allow employee to fully perform each essential job function affected by employee's disability.

[illegible handwriting]

Physician Signature [signature] Date 8/9/03

***REQUEST FOR ACCOMODATION FORM SHOULD BE RETURNED TO EMPLOYEE HEALTH SERVICES***

Christiana Care Health System
4755 Stanton-Ogletown Road
PO Box 6001
Newark, DE 19718
Fax: 733-1890



D0391
CONFIDENTIAL

Faxed 9-11 [initials]

Called Dr. Frasier's office to have them decipher the faxed ADA application.

A. Disease Characterized by intermittent episodes of fatigue, joint pain, rash, fever, pleurisy occasional problems walking, working and concentrating

D. Allowing employee to have periods of rest during working hours and use her vacation liberally would help prevent major disease flares.

During major flares the patient will not be able to function effectively at work.

REDACTED

D0628
CONFIDENTIAL

A-64

REDACTED

D0629
CONFIDENTIAL



Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

August 20, 2003

Ellen Zechman, M.D.
34 east Newtown Place,
Newark. DE 19702

Dear Dr. Zechman:

This is a letter in follow up of our discussion concerning the recommendations coming from the residency review committee meeting of August 18, 2003 concerning your progress within the residency program. Significant concerns were expressed with the progress of your surgical skills. It was generally felt that there had been some progress but this progress was not at an appropriate or satisfactory rate. There was also concern about you ability to multi-task and your stress reactions and response to clinical situations. There was also concern about your acceptance of your current needs, and the role that you need to play in meeting those needs. The committee noted that you seem to be exceedingly stressed and you have many signs of depression. Also noted was that you are having trouble interacting with you resident peer group and are having problems meeting your personal and family needs. There was also concern expressed that your emotional status is preventing you from learning appropriately or that there might be an underlying learning disability but that these could not be clearly separated. The committee was impressed with your dedication and desire to accomplish the completion of your training.

The committee is recommending that you currently remain on the GYN service in the same status as a second-year resident with your future rotations to be decided once it is clear what accommodations must be made for your disability. We are currently awaiting the final report from Dr. Frasier. The committee stated that you must see Dr. Judith Marcus for an evaluation for your mental and emotional status and its relation to any learning issues. We need a report from her concerning your status and potential need for continuing interaction.

At the end of our discussion you stated that you will see Dr. Marcus and on 8/20/03 you will make an appointment to see her. Clarification of the impact of your emotional status on your performance is very important to the committee in order for them to evaluate your true medical capabilities. We will inform you of the next evaluation date. We also discussed Dr. Joseph Patruno continuing as your mentor and your use of him as a person to go to with problems.

Sincerely,

Lamar Ekbladh

Lamar Ekbladh, M.D.
Chair and Active Program Director
Obstetrics and Gynecology

Cc: Brian Little, M.D.

REDACTED

D0637
CONFIDENTIAL



CHRISTIANA CARE
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

To: Ellen Zechman, M.D.

From: Lamar Ekbladh, M.D; Chair and Acting Program Director

Date: September 16, 2003

RE: Request for Family/Medical Leave

Dear Dr. Zechman

It has been brought to our attention that you may need to take periods of intermittent leave. We need to determine if you are eligible for a Family and Medical Leave under the Family and Medical Leave Act of 1993 (FMLA).

Enclosed is a **Certificate of Healthcare Provider** that must be completed by your medical provider and returned to Employee Health Services by (**15 days from date of letter - Please fill in**) . This form is necessary to approve and process your Family and Medical Leave..

If proper documentation is received, your absences will be counted against your annual 12 week FMLA entitlement, effective with the first day that you were absent from work due to this condition.

If you have questions regarding FMLA or Christiana Care's Leave of Absence or Attendance policy, please contact Michelle Eklund, Employee Relations at (302) 733-1228. If you have questions about your position or meeting the deadline for returning your Certification form, please contact your supervisor directly.

cc: Human Resources

REDACTED

D0643
CONFIDENTIAL

A-70

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

D0640
CONFIDENTIAL

REDACTED

D0641
CONFIDENTIAL

REDACTED

D0656
CONFIDENTIAL

REDACTED

D0657
CONFIDENTIAL

A-81

REDACTED

D0658
CONFIDENTIAL

A-82



Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

Sent Reg Mail 10/3/03 SK

September 30, 2003

Ellen Zechman, M.D.
34 east Newtown Place,
Newark. DE 19702

Dear Dr. Zechman:

At the September 29, 2003 meeting of the Residency Review Committee of the Department of Obstetrics and Gynecology, it was the unanimous decision of the members of the committee to dismiss you for academic reasons. It was the opinion of the committee that your academic performance was well below average for a resident at the PGY2 level. Factors that were involved in this decision included:

- Overall evaluation scores very low
- Surgical skills are that of a PGY1
- Failure to meet a special rotation and mainstreaming resulted in performance which is still below expected level
- No significant improvement with surgical skills.
- Very poor clinical judgment which leads to concerns about patient care and safety
- Unreceptive to educational interaction, therefore very hard to work with and teach

Enclosed you will find a copy of the Fair Hearing Policy. Please note the process for requesting of a Fair Hearing. Within 7 days of receipt of this letter notice of your intent to request a Fair Hearing must be received by the office of Academic Affairs, in writing. This notice must be sent via registered certified mail.

Sincerely,

Lamar Ekbladh

Lamar Ekbladh, M.D.
Acting Residency Program Director & Chair
Obstetrics and Gynecology

LE/slk

cc: Brian W. Little, MD
DIO and Chair – GMEC Committee
Enclosure

# CERTIFICATION OF HEALTH CARE PROVIDER

(Family and Medical Leave Act of 1993)

1. Employee's Name: Ellen Huffman Zechman

2. Patient's Name (if different from employee): As Above

3. The attached sheet describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

   (1)___ (2)___ (3)___ (4) ✓ (5)___ (6)___ or

   None of the above ___

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   Chronic Condition:

   1. Continues over an extended period of time including recurring episodes of a single underlying condition

   2. May cause episodic periods of illness rather than continuing period of incapacity

RECEIVED
OCT 03 2003
BY CHR-EHS

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity if different):

Exacerbation of Left Leg Numbness began Sept 20, 2003

b. Will it be necessary for the employee to take work only intermittently or to work on a less than a full schedule as a result of the condition (including for treatment described in Item 6 below)? ________

If yes, give the probable duration: This cannot be predicted each episode must be addressed with the problems presenting with that particular episode

c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes if incapacity:

Unknown for duration + frequency - each episode must be individually addressed.

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments. Unknown - treatments and interventions are directly related to exacerbations and problems particular to each exacerbation

If the patient will be absent from work or other daily activities because of treatment or on an intermittent or part-time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery, if any:

Unknown each treatment and duration of treatment is unique to the presenting problem with each exacerbation.

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments.

At times depending on the particular need of the presenting problem

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

Patient is under supervision indefinately

Regimen of care is individualized to each exacerbation and cannot be predicted in advance.

1) Non Steroidal Anti inflammatory Drugs
2) Occasional Prednisone
3. Muscle Relaxation - some at Night

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind? ________

This is individual and unique to the particular episode and cannot be predicted in advance.

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (please see the attached list of essential job functions)? ________ If yes, please list the essential functions the employee is unable to perform:

This cannot be predicted in advance

c. If neither a. or b. applies, is it necessary for the employee to be absent from work for treatment? ________ This is dependent on the episode and presenting problem at that time.

N/A 8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation? ________

N/A b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery? ________

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable duration of this need:

There is no way to predict this Each exacerbation must be addressed individually to meet the medical needs of the presenting problem.

[signature], MD
(Signature of Health Care Provider)

RHEUMATOLOGY
(Type of Practice)

1406 NEUSE, NEW BERN, NC.
(Address)

252-634-9400
(Telephone number)

**To be completed by the employee needing the family leave to care for a family member:**

State the ~~care you will provide~~ and an estimate of the period during which care will be provided, including a schedule ~~if leave is to be taken~~ intermittently ~~or if it will be necessary~~ for you to work less than a full schedule:

N/A

(Employee Signature)

(Date)

A "Serious Health Condition" means an illness, injury, impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves:

(1) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to pregnancy, or for prenatal care

4. Chronic Conditions Requiring Treatments

A chronic condition which:

(1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

5. Permanent/Long-Term Conditions Requiring Supervision

A period of incapacity which is **permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider**. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by **a provider of health care services under orders of, or on the referral by**, a health care provider, either for **restorative surgery** after an accident or other injury, or for a condition that would likely **result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment**, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

Accident

## Employee Health Services

To: Academic Affairs
Manager/Supervisor

From: Employee Health Services

Date:

Re: FMLA Approval/Denial

On 10/03/03, we were provided with a *Certification of Health Care Provider* form for Ellen Huffman Zechman. Following is a result of our review:

☐ Not approved (See Comments below)

☒ Approved for:

☐ Leave of Absence
Expected duration of leave ________

☒ Intermittent Time including Reduced Work Schedule

☐ FMLA qualifying for the employee's own serious health condition

☐ FMLA qualifying for the serious health condition of an immediate family member

☐ Parent ________ ☐ Spouse ☐ Child ________

Comments: ________

Reviewed by: CCollins ARNP Date: 10/6/03

CC: Employee Relations

mailed 10/6/03 KB

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: [ ] FEPA [X] EEOC

Agency(ies) Charge No(s): 170-2004-01136

Delaware Department Of Labor and EEOC

State or local Agency, if any

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Dr. Ellen Zechman | (252) 636-2625 | REDACTED -1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1608 Tryon Road, New Bern, NC 28560 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| CHRISTIANA CARE | 101 - 200 | (302) 733-1000 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4755 Ogletown-Stanton Road, Po Box 6001, Newark, DE 19718 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN

[X] RETALIATION [X] AGE [X] DISABILITY [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 09-29-2003 | 09-29-2003 |

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I. I began working for Respondent in or about June 2002, as a Resident Physician in training for the Department of Obstetrics and Gynecology. During my tenure I was denied educational opportunities and subject to different terms and conditions of employment. I was also subjected to ongoing harassment and slander by Dr. Robyn Gray (Chief Resident) and Dr. Rachel Heinle (co-worker) and placed ~~of~~ on remediation for performance deficiencies. I voiced several complaints to ~~the~~ Dr. Lamar Ekbladh, Residency Director about various problems with the program. I also complained about discrimination with regard to opportunities to advance in surgical skills. When these complaints were not addressed, I contacted the ~~American College of Graduate Medical Education.~~** Accreditation Council on Graduate Medical Education EZ

**In addition, I was forced to take vacation time to seek medical care instead of using my sick time. I requested a reasonable accommodation to modify my schedule which was denied. After I applied for Family Medical Leave (FMLA), on October 3, 2003, I was advised the Residency Review Committee voted to dismiss me. As a result, I was forced to resign from my position.**

**II. I was later informed that the Residency Review Committee ~~did not~~ recommend ~~that my employment be retained~~** My dismissal EHZ **based upon my alleged performance deficiencies.**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

Jun 09, 2004 [signature]

*Date* *Charging Party Signature* EHZ

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

Margolis Edelstein
Zechman, E. v. Christiana Care
0007

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>170-2004-01136 |
|---|---|---|

Delaware Department Of Labor and EEOC

State or local Agency, if any

THE PARTICULARS ARE *(Continued from previous page)*:

**III. I believe that I was discriminated against because of my age (46), disability and retaliation in violation of the Age Discrimination in Employment Act, and the Americans with Disabilities Act, when I was subjected to different terms and conditions of employment and ~~ultimately discharged.~~** forced to resign. EMZ

Please See Addendum:

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>Jun 09, 2004 — Date<br>[signature] — Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Margolis Edelstein
Zechman, E. v. Christiana Care
0008