IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELLEN ZECHMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 05-159 JJF |
| v. | : | |
| | : | |
| CHRISTIANA CARE HEALTH SYSTEMS, | : | |
| | : | |
| Defendant. | : | |

APPENDIX TO PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire #2407
Lori A. Brewington, Esquire #4522
1509 Gilpin Avenue
Wilmington, DE 19806
302 777-4680
lbrewington@margolisedelstein.com
Counsel for Plaintiff, Zechman

TABLE OF CONTENTS

| Bates Nos. | Description |
|---|---|
| B-0001 | November 21, 2002 letter from Anthony C. Sciscione, D.O. to Ghassem Vakili, M.D. |
| B-0002 | Minutes of March 17, 2003 meeting to review CREOG scores |
| B-0003 | March 24, 2003 letter from Anthony C. Sciscione, D.O. to Dr. Ellen H. Zechman |
| B-0004 | May 2, 2003 Mock Oral Boards Results of Ellen Zechman, MD from Patrice Weiss, MD |
| B-0005 | May 2, 2003 Mock Oral Boards of Ellen Zechman, MD from Michael Beldin, MD |
| B-0006 | May 2, 2003 Mock Oral Boards of Ellen Zechman, MD from Craig Sobolewski, MD |
| B-0007 | May 2, 2003 Mock Oral Boards of Ellen Zechman, MD from Matthew Hoffman, MD |
| B-0008-0009 | June 18, 2003 email from Ellen Zechman to Dr. O'Connor |
| B-0010-0011 | July 23, 2003 letter from Ellen Zechman, MD to Dr. Ekbladh |
| B-0012-0015 | July 24, 203 Request for Disability Accomodation by Ellen Zehcman |
| B-0016 | May 13, 2003 email from Ellen H. Zechman to Anthony Sciscione, MD |
| B-0017 | July 26, 2003 email from Ellen H.. Zechman to Lamar Ekbladh, MD |
| B-0018 | July 29, 2003 email from Ellen H. Zechman to Robyn Gray |
| B-0019 | August 1, 2003 email from Ellen H. Zechman to Lamar Ekbladh, MD |
| B-0020 | August 1, 2003 email from Ellen H. Zechman to Lamar Ekbladh, MD |
| B-0021 | July 30, 2003 email from Lamar Ekbladh, Md to Ellen H. Zechman |
| B-0022 | August 11, 2003 email from Ellen H. Zechman to Sandra I. Kardos |
| B-0023 | July 30, 2003 notice re mid-quarter RRC meeting scheduled for August 18, 2003 signed by Ellen Zechman, M.D. |
| B-0024-0025 | August 18, 2003 CCHS Dept of Obstetrics and Gynecology Resident Review Committee Minutes |
| B-0026-0027 | August 20, 2003 Letter from Lamar Ekbladh, M.D. to Ellen Zechman, M.D. |
| B-0028 | August 27, 2003 email from Sandra L. Kardos to Ellen H. Zechman |
| B-0029 | September 3, 2003 email from Sandra L. Kardos to Ellen H. Zechman |
| B-0030 | Paid Time Off/Leave Policy |
| B-0031-0039 | Policy D-1 – Leaves of Absence |
| B-0040 | September 4, 2003 Lamar Ekbladh, M.D. to Ellen Zechman, M.D. |
| B-0041-0044 | Fax from Coastal Arthritis and Rheumatism Associates (Dr. Fraser) to Sandy Cardos of Certificationo f Health Care Provider for Family and Medical Leave Act of 1993 for Ellen Huffman Zechman |
| B-0045 | September 16, 2003 letter from Lamar Ekbladh, M.D. to Ellen Zechman, M.D. |
| B-0046-0049 | Fax from Allergy & Asthma Center to Sandy Kardos of Christiana |

| | |
|---|---|
| | Care Health Services Request for Leave of Absence |
| B-0050 | September 22, 2003 prescription from Dr. Fraser for Ellen Zechman |
| B-0051-0053 | September 29, 2003 CCHS Dept of Obstetrics and Gynecology Resident Review Committee Meeting Minutes |
| B-0054 | September 30, 2003 letter from Lamar Ekbladh, M.D. to Ellen Zechman, M.D. |
| B-0055 | October 6, 2003 letter from John Carlson, D.O. to Dr. Brian Little |
| B-0056-0061 | October 1, 2004 letter from Michelle Eklund, Employee Relations Representative to Ms. Evangeline Draper Hawthorne, EEOC |
| B-0062-0067 | Facsimile of Certification of Health Care Provider received by CCHS October 3, 2003 from Coastal Alartritis |
| B-0068 | Memo to Academic Affairs from Employee Health Services dated October 6, 2003 |
| B-0069-0070 | May 7, 2006 letter from David D. Fraser, M.D. to Lori A. Brewington, Esquire |
| B-0071-0072 | July 28, 2006 letter from Michelle Eklund, Senior Employee Relations Representative to Ms. Barbara McIlwain, Investigator with Department of Labor, Employment Standards Administration |
| B-0073-0076 | July 10, 2006 letter from Barbara McIlwain of US Department of Labor Employment Standards Administration to Michelle Eklund, Sr., ERS |
| B-0077-0078 | July 10, 2006 facsimile from Barbara McIlwain of US Dept of Labor to Michelle Eklund, Sr ERS |
| B-0079 | Blank form WH-58 Receipt for Payment of Lost or Denied Wages, Employment Benefits, or Other Compensation |
| B-0080 | May 18, 2006 facsimile from Barbara McIlwain of US Dept of Labor to Michelle Eklund, Sr. ERS |
| B-0081-0082 | Payroll Register from Christiana Care Health Services of E. H. Zechman dated 8/2/03, 8/16/03, 8/30/03, 9/13/03 and 9/27/03 |
| B-0083 | May 31, 2006 facsimile cover sheet from Michelle Eklund to Linda Evans CCHS Payroll Dept |
| B-0084 | January 25, 2006 letter from Michelle Eklund, Sr. Employee Relations Representative of CCHS to Ms. Barbara McIlwain, Investigatory of Department of Labor, Employment Standards Administration |
| B-0085 | Fax Cover Sheet dated January 30, 2006 from Michelle Eklund to Barbara McIlwain |
| B-0086 | Fax Confirmation Sheet dated January 30, 2006 from Michelle Eklund to Barbara McIlwain |
| B-0087-0091 | Evaluation Summary for Ellen Zechman distributed between July 1, 2002 and June 30, 2003 |
| B-0092-0096 | Fully executed Resident Agreement of Appointment between Christiana Care Health Services and Ellen H. Zehcman, M.D. effective July 1, 2003 through June 30, 2004 |
| B-0097-0100 | Fully executed Resident Agreement of Appointment between Christiana Care Health Services and Ellen Huffman-Zechman |

| | |
|---|---|
| | effective July 1, 2002 through June 30, 2003 |
| B-0101 | Christiana Care Health Services Benefits Plan for Residents |
| B-0102 | February 18, 2003 letter from Philip A. Shlossman, MD to Ellen Zechman, MD |
| B-0103 | July 3, 2003 letter from Moe to Lamar |
| B-0104 | July 25, 2003 email from Paul Kaminski to Lamar Ekbladh |
| B-0105-0108 | September 25, 2003 CCHS – Obstetrics and Gynecology House Officer Evaluation Form completed by Dr. Moses Hochman |
| B-0109 | April 30, 2003 letter from Ellen Zechman, MD to OB/GYN Attending Physician |
| B-0110-0111 | April 4, 2003 letter from Moses Hochman, MD to Dr. Peter Heyl |
| B-0112-0120 | September 20, 2006 transcript of deposition of Janice Tildon-Burton, OB/GYN |
| B-0121 | March 14, 2005 Civil Cover Sheet |
| B-0122-0145 | Zechman v. Christiana Care Health Systems Complaint filed March 15, 2005 |
| B-0146-0148 | Exhibit A to Complaint – Charge of Discrimination from Delaware Department of Labor |
| B-0149 | Exhibit B to Complaint – EEOC Dismissal and Notice of Rights |
| B-0150-0208 | June 20, 2006 transcript of deposition of Ellen Zechman |
| B-0209-0261 | August 16, 2006 transcript of deposition of Ellen Zechman Volume #2 |
| B-0262-0279 | July 14, 2006 transcript of deposition of Paul F. Kaminski, M.D. |
| B-0280-0306 | August 2, 206 transcript of deposition of Lamar Ekbladh, M.D. |
| B-0307-0323 | September 7, 2006 transcript of deposition of Anthony C. Sciscione, D.O. |
| B0324-0352 | September 13, 2006 transcript of deposition of Joseph E. Patruno, M.D. |
| B-0353-0378 | July 28, 2006 transcript of deposition of David D. Fraser, M.D. volume 1 |



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

November 21, 2002

302-733-6565 phone
302-733-3340 fax

Ghassem Vakili, M.D.
314 E. Main Street
Newark, DE 19711

Dear Dr. Vakili:

First, I want to thank you for your commitment to teaching our residents and students over the last several years. However, you put me in a very awkward position as residency director by refusing to scrub with Dr. Zechman last week. Your reasons were "I have an office full of patients", "I need to hurry", "she is not teachable", "I'm not in the mood to teach someone today". While I understand these reasons from a practical perspective, I do not understand them from an educational perspective. Continuing to take a resident who may be behind the other residents and denying them the opportunity for teaching only continues to widen the gap between the resident and their cohorts. I hope you understand as residency director, it is my goal to make sure that every resident reaches his or her God-given potential. While this is different for each resident, it is still my charge to make sure they are educated and competent when they leave this program. I think it is a rare occurrence, that a person who has excelled in college and in medical school cannot be brought to a minimal level of competency during their residency. I especially think this is true with Dr. Zechman.

Dr. Zechman came to our program in the second year. She came from a program, which we had recognized was not as academically or clinically rigorous as our program. I had recognized that she would be significantly behind when she started this program. My approach, instead of ignoring this fact, was to give Dr. Zechman extra education, mentoring and teaching and basically placing her in an emersion program. Dr. Zechman has received this challenge with great zeal. She has an excellent attitude and continues to work hard. She may not be up to the level of her other cohorts but this will only occur with continued education and hard work on everybody's part, including Dr. Zechman. You are one of our senior staff and have been a solid surgical educator. We need your experience to share with our trainees, especially those that need extra help. I hope you will agree to help us train all of our residents despite their differing abilities.

Sincerely,

Anthony C. Sciscione, D.O.                    **B-0001**

ACS/slk

Cc: Dr. Ekbladh

Margolis Edelstein
Zechman, E. v. Christiana Care
0385

Special Meeting:     March 17, 2003
Attendees:  Dr. Sciscione, Dr. E. Whitney, Dr. Hochman, Dr. Ekbladh, Dr. Demeo, Dr. Shlossman, Dr. Brosch

To review CREOG scores.

| Total Percent | | Percent by Year | | | | |
|---|---|---|---|---|---|---|
| | | PGY4 | | | PGY2 | |
| Naqvi | 73.94% | Bratsch | 30% | | Heinle | 63% |
| Deluca | 72.64% | Liu | 13% | | Kersh | 70% |
| Kersh | 70.68% | Payne | 18% | | Kirifides | 10% |
| Barlow | 70.03% | Vinod | 30% | | Zechman | 12% |
| Bratsch | 69.71% | | | | | |
| Vinod | 69.71% | | | | | |
| Heinle | 67.10% | PGY3 | | | PGY1 | |
| Payne | 67.10% | Deluca | 61% | | Barlow | 90% |
| Sturrock | 67.10% | Gray | 8% | | Dimichele | 60% |
| Liu | 66.10% | Naqvi | 70% | | Hammond | 61% |
| Dimichele | 64.50% | Sturrock | 28% | | Likhyani | 39% |
| Hammond | 63.52% | | | | | |
| Gray | 62.21% | | | | | |
| Zechman | 59.61% | | | | | |
| Likhyani | 59.28% | | | | | |
| Kirifides | 58.31% | | | | | |

Remediation with promotion:
Dr. Robyn Gray
Mentor – Dr. Martha Rode

Dr. Alexander Kirifides
Mentor – Dr. Philip Shlossman

Remediation with possible no promotion:
Dr. Ellen Zechman
Mentor – Dr. Joseph Patruno

Mandatory Board Preparation:
Dr. Sharon Liu
Mentor – Dr. Paul Kaminski

Dr. Karroll Payne
Mentor – Dr. Paul Kaminski

**B-0002**

Dr. Zechman progress will be reviewed at a special meeting on June 16th, 2003 at 5:30. A decision will be made as to whether to offer her a PGY3 contract, a PGY3 contract with remediation ongoing, a PGY2 contract with remediation ongoing, or no contract.

Margolis Edelstein
Zechman, E. v. Christiana Care
0406



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718                                   March 24, 2003

302-733-6565 phone
302-733-3340 fax

Dr. Ellen H. Zechman
34 east Newtown Place
Newark, DE 19702

Dear Dr. Zechman:

The Departmental Education Committee met Monday, March 17, 2003 to discuss the progress of each resident and the results of their CREOG In-Service Training Examination. As we discussed, your In-Service exam scores place you in danger of failing your written boards in obstetrics and gynecology. The committee already determined the need to implement a remediation plan for you and you have been in remediation since December 2002. This remediation has resulted in some improvement in your clinical skills. However there are still significant concerns about your ability to function at the PGY3/senior resident level. The committee reviewed your evaluations, CREOG scores, evaluation comments, and letters prepared by your mentor coaches who are Dr. Patruno and Dr. Hoffman.

The committee felt after reviewing all the information above that you are performing more in accord with a PGY1, rather than a PGY2 resident and the committee felt that you should continue in our program, but in the PGY2 position starting July 1, 2003. Therefore I am notifying you that at this point in time, the recommendation of the committee is to offer you a PGY2 position at the conclusion of this academic year. However, the committee agreed to extend your remediation plan and over the next two months you will have the opportunity to demonstrate your ability to advance to a PGY3 year. During this time and as part of your extended remediation plan you are expected to create a schedule to meet with your mentor coach, Dr. Joseph Patruno. This time is to be carved out of your resident schedule. It is your responsibility to contact Dr. Patruno to set this up and convey this information to Sandi Kardos so that she can make the proper arrangements in the schedule. There will be an oral examination in May. In order to progress to the PGY3 year you must meet or exceed the expectations of a PGY2 resident just prior to entering their PGY3 year. Furthermore, I would strongly encourage you to distribute as many surgical evaluative cards to attending surgeons as possible. We will continue to encourage faculty to perform evaluations on your performance. The minimum standard to advance to the PGY3 year will be that 80% of these evaluations will meet or exceed an average rating for a PGY2 resident. In early June 2003, the Departmental Education Committee will meet to discuss and determine if you will be offered a PGY3 position in this program. If you have not met the above criteria or prove that you are capable of taking on the responsibilities of a PGY3 resident the committee will recommend that you stay in our residency under remediation in the PGY2 year. If you meet these criteria and prove that you are capable of performing the PGY3 responsibilities you will be offered a contract as a PGY3 for the 2003-2004 academic year.

I look forward to working with you through your course here as a resident in obstetrics and gynecology. If there is anything I can do to help in this process please do not hesitate to contact me.

Sincerely,

Anthony C. Sciscione, D.O.
Residency Program Director                          **B-0003**
Obstetrics and Gynecology

ACS/slk
cc: Dr. Brian Little

*I have read this letter, but do not agree with being forced into repeating*

Margolis Edelstein
Zechman, E. v. Christiana Care
0153



**CHRISTIANA CARE**
HEALTH SYSTEM

**Obstetrics and Gynecology Residency Program**

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

May 2, 2003

Mock Oral Boards

Ellen Zechman, MD

1).    Above Expected Level      _____

2).    At Expected Level      ✗_____

3).    Below Expected Level      _____

Patrice Weiss, MD

*I had difficulty working thru the cases with Ellen & keeping her focused on point at hand*

B-0004

D1008
CONFIDENTIAL



**CHRISTIANA CARE**
HEALTH SYSTEM

**Obstetrics and Gynecology Residency Program**

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

May 2, 2003

Mock Oral Boards

Ellen Zechman, MD

1).    Above Expected Level          _____

2).    At Expected Level              ✓_____

3).    Below Expected Level          _____

_____
Michael Beldin, MD

*fund of knowledge is present,*
*but tends to ramble a bit*

**B-0005**

D1009
CONFIDENTIAL



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

May 2, 2003

Mock Oral Boards

Ellen Zechman, MD

1).    Above Expected Level          _____

2).    At Expected Level             ✓_____

3).    Below Expected Level          _____

Craig Sobelesky, MD
Sobolewski

Ellen jumped around a lot but ultimately got
the proper end point. I think her knowledge
& understanding is at the appropriate level but
she should improve on her communication and
clear, precise thought processing.

**B-0006**

D1010
CONFIDENTIAL



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

May 2, 2003

Mock Oral Boards

Ellen Zechman, M.D.

1).    Above Expected Level          _____.

2).    At Expected Level             ✓

3).    Below Expected Level          _____

Matthew Hoffman, MD

Answered all aspects of questions. Disorganized
but covered all points - no Knowledge of
chemo + superficial Knowledge of antibiotics
Superficial Knowledge of spread of ovarian CA
(wanted MRI for bone spread)

B-0007

D1011
CONFIDENTIAL

| Subj: | **Fwd: residency abuse** |
|---|---|
| Date: | 6/19/2003 3:14:01 PM Eastern Daylight Time |
| From: | ELLENZECHMAN |
| To: | poc@acgme.org |

I tried to send this yesterday, there was an error in the address.

---

Forwarded Message:

| Subj: | **residency abuse and discrimination** |
|---|---|
| Date: | 6/18/2003 4:19:21 PM Eastern Daylight Time |
| From: | ELLENZECHMAN |
| To: | poc@acgme/org |

Dear Dr. O'Connor,

I am contacting you concerning a long-standing problem at Christiana Care Hospital,Newark DE, Ob/Gyn residency program and am asking that you review the process by which the residents are evaluated and promoted. This was an issue at the recent Residency Review of the Ob/gyn teaching program and contributed to the programs pending probationary status. I am asking that you keep my name confidential because I am terrified that there will be severe retribution against me for speaking out and it would be the end of my Ob/Gyn career.

I transferred to the Christiana Care Ob/Gyn residency in July 2002 after completing a non-continuing PGY-1 in another institution. When I interviewed for the position I made it perfectly clear that my previous program was much slower paced and that my OR experience was limited because 1st year residents manned the Labor Floor and had minimal operating opportunity until 2 and 3 rd year. I was eager to join Christiana since I will be returning to practice in rural North Carolina, where OB/GYN's are desperately needed. I was offered the PGY-2 position and accepted.

I was immediately plugged ino the open postion and worked as hard as possible.
All of my on call time and 3/4 of my year consists of being in a 10 exam room female emergency room Ob/Gyn triage. This is a high volume area at times 30 to 40 people coming in for various reasons in a 12 hour shift. For evenings, weekends, and holidays the 2nd year Ob resident is the only physician around. No direct supervision seeing patient with an attending. The majority of the patients are private patients, and not "Service" attending. We see these patients alone, evaluate and treat the patients with only telephone guidance from the attending who never even sees the patient. There has been several occasions when there was a serious problem... Saturday before Easter when a private patient came in with a 35 week fetal demise, and in DIC, the Teaching attending was in an Emergency C-section for a private patient ( Private attending not in house, not quickly available) and there was absolutely no one to help me. It took 40 to 45 minutes for an attending to finally show up for this patient.  Meanwhile I had 10 patients waiting to be seen with no additional help.
Now that the PGY-2 year is over, I have been told that I am not being promoted because I am "behind my PGY -2 colleagues".  I am not being offered a PGY-3 contract, but am offered a  PGY -2 contract.
I feel that they brought me into the program to staff there high need area, and failed to provide the training needed to advance my skills in this new program. Teaching programs should be expected to fulfill their obligations to their residents by teaching them, not using them as unsupervised slave laborers.
Additionally all the residents are expected to admit all private patients, and write daily notes on these patient. We are being used as slave labor for the private physicians so that they do not have to come in and see their own patients. With the high volume at Christiana Care, and  small amount of residents, this is becoming impossible.  We are even expected to stay after our new work hours to write notes on private patients.  Of course this is not officially written, but we are harassed by the private doctors if we do not get it done. The private physicians on the Residency Review Committee are particularly guilty of using us as their personal slaves.

Additionally through out my year at Christiana, I was continuously "pulled" from my Gyn rotation to fill in either at Ob/triage or L&D and denied the opportunity to advance my surgical skills. Then in turn I am being criticized  for not having the operating skills of my counterparts.
I am aware this has happened to a previous resident that transferred in as a PGY-2 as well, Rita Vinod, now graduating this year.  She reports being discriminated against as well, so this apparently is an ongoing problem. I am an older resident 46 yrs old and have a disability ..Rheumatoid Arthritis, I feel I am being targeted for this abuse secondary to being "nontraditional" as well as having  transferred into the program.
Please check into how Christiana uses their Ob residents as slaves for the private physicians, it is time for this

Margolis Edelstein
Zechman, E. v. Christiana Care
0366

type of teaching and "paying your dues" to end and programs to become teaching institutions. It is especially important in view of the reduced interest in Ob/Gyn.

Once again, I am begging you to not reveal me as a source, I am sure they would seek out any reason possible to get rid of me. I am scared, but I cannot keep my mouth shut and see this abuse continue.

Ellen Zechman, MD

**B-0009**

# Ellen Zechman, MD

*1608 Tryon Road*
*New Bern, NC*
ELLENZECHMAN@aol.com
July 23, 2003

Dear Dr Ekbladh,

As you know, I am committed to doing whatever is necessary to complete this program and become a Board Certified in OB/Gyn so that I may return to North Carolina and practice in my hometown area that is medically underserved.

Unfortunately, as you know I have a disability, Mixed Connective Tissue Disease, which has both symptoms of Lupus and Rheumatoid Arthritis. My condition is very controllable, with rest and occasional medications. One of the major manifestations of these autoimmune diseases in fatigue and with our busy work schedule, I am having problems in this area.

I am asking for some creative scheduling to help me maintain optimal health in addition to meeting my requirements as a resident.

I am asking for additional days off to be worked into the schedule to allow 2 periods of 72 hour breaks in a 4-week work cycle. This time would include the normal time off, but adding an additional day to the scheduled break. Since the Resident manual states that we are allowed "sick days" the days that do not come under vacation, could come under the "sick day" or simply unpaid excused days since they are medically needed. I have tried to break up my vacation to allow for as many of these breaks as possible prior to making this request.

B-0010



Margolis Edelstein
Zechman, E. v. Christiana Care
0254

These days would not need to disrupt the regular weekend schedule. As an example. If I am scheduled to work Friday night and Sunday, technically I am working Friday, Saturday (midnight until 8:30am) and Sunday. I am requesting that I be allowed a 72 hour break the following week. If I am scheduled for working on a Saturday, then having the 72 hours after that off...Sunday, Monday and Tuesday. This would allow minimal disruption of the work schedule. This could include a normally scheduled weekend (usually we get one or two full weekends off a 4 week cycle) but tacking on a Monday or Friday to give the 72 hour break. I have already tried to break up my vacation to allow for as much of this as possible.

I sincerely wish to successfully complete this residency program, I think you realize that by now. I am very grateful for all the efforts that have been made to help me achieve this goal.

Sincerely,

Ellen Zechman, MD

B-0011

Margolis Edelstein
Zechman, E. v. Christiana Care
0255

## REQUEST FOR DISABILITY ACCOMODATION

**I.     To Be Completed By Employee**

Name _Ellen  Zechman_          Date _7/24/03_

Job Title _Resident_          Dept. _OB/Gyn_

Location: (Christiana) Wilmington  Rcklnd Rd  Riverside  HealthCare Cntr  VNA  Other Specify:_____

Nature of Disability _____ _Mixed  Connective  Tissue  Disease_

Date of Diagnosis _____ _1996_

Accommodation Requested _Additional  days  of  for  longer  Rest  Breaks,  with  scheduled  off_

Treating Physician (*Name, Address, Telephone Number*)_____
_David  Fraser_

### MEDICAL RECORDS RELEASE

I, ( _Ellen Zechman_ ), hereby request and authorize that _Employee Health Services,_ as a representative of **Christiana Care Health System,** my employer contact my physician to discuss the nature and extent of my disability and any accommodations necessary for continued performance of the essential functions of my job.  I also authorize release of my medical records to the extent that they are relevant to my request for an accommodation.   _Records  only  relating  to  my  condition  the  last  3  years_

_Records  only  to  my  Connective  Tissue  Disease_
**Employee Signature** _Ellen Zechman MD_          Date _7/24/03_

**I.     TO BE COMPLETED BY MANAGER**

Major Job Responsibilities:
(Use Job description/performance standards to determine _essential job functions_.)

- _See  attached - "Essential  job  functions  for_
- _obstetrics/gynecology  Residents"_
-
-
-
-

Mgr. Signature _JoAnn Umbel_          Date _7/23/03_

**B-0012**

Margolis Edelstein
Zechman, E. v. Christiana Care
0060

## II.    TO BE COMPLETED BY PHYSICIAN

A. Please identify physical/mental limitations caused by employee's disability.

_[handwritten, illegible]_

B. What essential job responsibilities are affected by employee's disability, and to what degree is employee's performance of the essential function (s) limited? **(Please refer to Section II for list of employee's major job responsibilities.)**

_( as above )_

C. Duration of Disability _[handwritten: intermittent]_

1. Is employee's limitation (s) permanent?    YES    or    NO

2. If limitations are not permanent, how long will they persist?

_as above, intermittent_

D. Please suggest any accommodation, **(please be specific)** that will allow employee to fully perform each essential job function affected by employee's disability.

_[handwritten, illegible]_

Physician Signature _____    Date  8 / 2 / 03

Christiana Care Health System
4755 Stanton-Ogletown Road
PO Box 6001
Newark, DE 19718
Fax: 733-1690

**B-0013**

Margolis Edelstein
Zechman, E. v. Christiana Care
0061

III.    Employee Relations Comments

_____
_____
_____
_____
_____
_____

ER Reps Signature_____    Date_____

Entered into Database Date:_____

**B-0014**

Margolis Edelstein
Zechman, E. v. Christiana Ca
0062

Essential Job Functions for Obstetric/Gynecology Residents

Participate in and provide compassionate, appropriate, safe, and effective patient care for the treatment of Obstetric/Gynecologic health problems and promote good health under supervision, commensurate with the resident's level of knowledge.

Continue the development of medical knowledge about established and evolving biomedical, clinical and cognate sciences and the application of this knowledge to patient care.

Participate in the educational and scholarly activities of the residency program, and as required, assume responsibility for teaching and supervising other residents and students.

Participate as appropriate in institutional programs and medical staff activities and adhere to established practices, procedures, and policies of the institution.

Participate on appropriate institutional committees and councils whose actions affect their education and/or patient care.

**B-0015**

Margolis Edelstein
Zechman, E. v. Christiana Care
0063

## Zechman, Ellen H.

**From:** Zechman, Ellen H.
**Sent:** Tuesday, May 13, 2003 8:29 AM
**To:** Sciscione, Anthony MD
**Cc:** Ekbladh, Lamar MD; Patruno, Joseph E. MD; Zechman, Ellen H.
**Subject:** repeatedly Pulled form GYN rotation

Dear Dr Sciscione,
I am greatly distressed that during my current GYN rotation, I am reassigned to Triage, or Labor and Delivery routinely.

Yesterday, I was assigned to Triage for the day, Fortunately, an intern was held up in a case and I was reassigned to the OR with Dr Carlson for an afternoon TVH.

Last week, I missed several opportunities for Gyn surgery due to being assigned to Triage and L&D.

Today, I have been assigned to Triage once again all day. The night float resident was assigned to a TVH with Dr Hochman.

This has happened each time I have been on my Gyn rotation, I just recently began recording it after recognizing the repeated pattern.

When I transferred to Christiana from Virginia, I made it clear that I was assigned to the labor floor and the reason I transferred to Christiana was to get more Surgical training. Unfortunately the opportunities are available, but I have been assigned to triage and Labor & Delivery missing many chances during my assigned GYN rotations.

Recently I have been Criticized for being behind in my Surgical skills when compared to the other 2 nd year Residents. How can I improve my skills If I am left in Triage and denied the opportunity to improve??

Why am I, the Gyn resident, not assigned to work with the Attending..Dr Hochman today...I am on the GYN training rotation?

Why was the intern allowed to advance her training in GYN and I was left once again in Triage?

Ellen Zechman

*I have since this time been "failed to promote to 3rd year" since I was "so far behind my colleagues in my Surgical skills". They made a great schedule out to allow me more surgery, while they "held me back" but up until the last 2 weeks it was not happening as far as getting the OR cases as they proposed.*

**B-0016**

1

Margolis Edelstein
Zechman, E. v. Christiana Care
0368

**Collins, Vicky**

| | |
|---|---|
| **From:** | Zechman, Ellen H. |
| **Sent:** | Saturday, July 26, 2003 5:10 PM |
| **To:** | Ekbladh, Lamar MD |
| **Subject:** | Update with DR Gray as chief resident |

I just wanted you to know that Dr Gray has been difficult to work with on call. She is not allowing me to make patient care decisions and even has asked the nurses in High Risk to Call her concurrently whenever I am called for any patient care issues.  Lisa Dempsey the charge nurse informed me of this.   Since I would never make any patient care decisions without
running them by my chief resident, I think this is unnecessary and undermining my authority as the1908 beeper. Please be reminded that I carried the 1908 beeper my 2nd year  OB rotations  just like Alex, Rachel, and Stef.  I had no adverse outcomes or any problems  the whole year on my rotations.
Additionally she sat me down and encouraged me to leave the program.

On Friday, I was left relieving in Triage rather than being allowed to go to the OR on a possible perforation on a patient that
   Dr Kaminski and I had seen in the clinic the day before.

I am just relaying this stuff to you so you can put things in perspective when reading any evaluations or advice you may get from her concerning me.
 Sincerely  Ellen Zechman

**B-0017**

Margolis Edelstein
Zechman, E. v. Christiana Care
0284

1

**Zechman, Ellen H.**

| | |
|---|---|
| **From:** | Zechman, Ellen H. |
| **Sent:** | Tuesday, July 29, 2003 8:27 AM |
| **To:** | Gray, Robyn |
| **Cc:** | Zechman, Ellen H. |
| **Subject:** | Rounds |

**Importance:**    High

I am just asking you to clarify your request that I attend morning OB rounds at 6:30 in the morning as you suggested this morning, and then again check out rounds in the evening.
  Traditionally only the residents on the involved service Ob or Gyn are required to attend these rounds not the residents on the off service rounds or the residents that are assigned to Clinic.
Has this rule been officially changed?  I have not seen the other residents coming to these rounds, I know that Alex has come to rounds if he was just finishing a case, but to my understanding this was not required.
Has this changed?
Has an official letter been sent out concerning this?

Just wanting things clarified in case I missed something,  I have not seen anything in my e-mail concerning this .
Ellen

*Example of Dr. Gray harassing me*
*: Dr. Ekbladh responds to Dr. Grays*
*demanding that I attend*
*: My response to Dr. Ekbladh.*

**B-0018**

Margolis Edelstein
Zechman, E. v. Christiana Care
0377

**From:** Zechman, Ellen H.
**To:** Ekbladh, Lamar MD
**Cc:** zechman@coastalnet.com
**Date:** 8/1/2003 10:08:40 AM
**Subject:** RE: re rounds

I do and I have been when I am free or easily available. I find it rather
interesting that other residents that are not assigned to the service on
that day don't get singled out for this issue.
Why am I all of a sudden being singled out for this as some big issue ? Did
the person bringing this up as an issue bother to mention that the other
residents that are not assigned to OB rounds are not at morning OB rounds or
evening check out rounds? That person's not on the
Gyn service do not attend the Gyn rounds unless they just finished a case
and pop in?
Who is suddenly bringing this up as an issue, and why am I being singled
out?
Also Please review the August Call schedule. Please note that there are 2
PGY-2's, an off service intern, PGY-3 and PGY-4 on call. So where does this
put my "learning experience"?
Am I going to be able to participate in decisions to better prepare me for
duties as a PGY-3 or am I going assigned the PGY-1 duties. Do you see how
this plan is actually detrimental to my learning progress ? What was said
to be the plan on paper is not being enforced on the floors.
I was supposed to get OR time with the teaching attending, this has not
happened. Just last week I was bumped out of surgery with my assigned
attending ..he even mentioned that to you.
I need your help in this, please I have been through enough with this.....
help me. I do not want to give up my goal of becoming a OB/GYN, and
OB/Gyn's are desperately needed in NC. This remediation plan is singling
me out...making me an outcast with my fellow residents. I am doing
everything I can to fulfill the requirements put before me, but the plan
that was proposed is not being enforced on the day to day floor level.
I did not do anything wrong to deserve this.
Please....I am begging you, Help me.

> ------Original Message------
> From: Ekbladh, Lamar MD
> Sent: Wednesday, July 30, 2003 12:57 PM
> To: Zechman, Ellen H.
> Subject: re rounds
>
> Ellen, I understand there is some issue as to whether you should attend
> morning and/or evening rounds. Although not required, all residents are
> encouraged to attend any potential learning experience. Some may attend
> and some not largely depending on their rotation and where they are. Feel
> free to attend or not depending on your own feeling. I would encourage you

**B-0019**

Margolis Edelstein
Zechman, E. v. Christiana Care
0119

## Zechman, Ellen H.

| | |
|---|---|
| **From:** | Zechman, Ellen H. |
| **Sent:** | Friday, August 01, 2003 10:09 AM |
| **To:** | Ekbladh, Lamar MD |
| **Cc:** | 'zechman@coastalnet.com' |
| **Subject:** | RE: re rounds |

**Importance:**     High

I do and I have been when I am free or easily available. I find it rather interesting that other residents that are not assigned to the service on that day don't get singled out for this issue.

Why am I all of a sudden being singled out for this as some big issue ? Did the person bringing this up as an issue bother to mention that the other residents that are not assigned to OB rounds are not at morning OB rounds or evening check out rounds?  That person's not on the

Gyn service do not attend the Gyn rounds unless they just finished a case and pop in?

Who is suddenly bringing this up as an issue, and why am I being singled out?

Also Please review the August Call schedule. Please note that there are 2 PGY-2's, an off service intern, PGY-3 and PGY-4 on call. So where does this put my "learning experience"?

Am I going to be able to participate in decisions to better prepare me for duties as a PGY-3 or am I going assigned the PGY-1 duties.  Do you see how this plan is actually detrimental to my learning progress ?  What was said to be the plan on paper is not being enforced on the floors.

I was supposed to get OR time with the teaching attending, this has not happened. Just last week I was bumped out of surgery with my assigned attending ..he even mentioned that to you.

 I need your help in this, please I have been through enough with this..... help me.   I do not want to give up my goal of becoming a OB/GYN, and  OB/Gyn's are desperately needed in NC.  This remediation plan is singling  me out...making me an outcast with my fellow residents.  I am doing everything I can to fulfill the requirements put before me, but the plan that was proposed is not being enforced on the day to day  floor level.

 I did not do anything wrong to deserve this.

Please....I am begging you, Help me.

-----Original Message-----
| | |
|---|---|
| **From:** | Ekbladh, Lamar MD |
| **Sent:** | Wednesday, July 30, 2003 12:57 PM |
| **To:** | Zechman, Ellen H. |
| **Subject:** | re rounds |

Ellen, I understand there is some issue as to whether you should attend morning and/or evening rounds. Although not required, all residents are encouraged to attend any potential learning experience. Some may attend and some not largely depending on their rotation and where they are. Feel free to attend or not depending on your own feeling. I would encourage you to take advantage when possible.

**B-0020**

1

Margolis Edelstein
Zechman, E. v. Christiana Care
0373

**From:** Zechman, Ellen H.
**To:** zechman@coastalnet.com
**Date:** 8/1/2003 10:09:27 AM
**Subject:** FW: re rounds

---

> -----Original Message-----
> From: Ekbladh, Lamar MD
> Sent: Wednesday, July 30, 2003 12:57 PM
> To: Zechman, Ellen H.
> Subject: re rounds
>
> Ellen, I understand there is some issue as to whether you should attend
> morning and/or evening rounds. Although not required, all residents are
> encouraged to attend any potential learning experience. Some may attend
> and some not largely depending on their rotation and where they are. Feel
> free to attend or not depending on your own feeling. I would encourage you
> to take advantage when possible.

**B-0021**

Margolis Edelstein
Zechman, E. v. Christiana Care
0118

_3b_

**From:** Zechman, Ellen H.

**To:** Kardos, Sandra L.

**Cc:** Ekbladh,Llamar,zechman@coastalnet.com; Llamar; zechman@coastalnet.com

**Date:** 8/11/2003 6:27:39 AM

**Subject:** Gyn rotation

Hi, I just checked the assignment board in the conference room for my Gyn cases.
I am not even listed on the board for any cases???
How am I supposed to improve my skills without any Cases??

**B-0022**

Margolis Edelstein
Zechman, E. v. Christiana Care
0147



# CHRISTIANA CARE
### HEALTH SYSTEM

**Obstetrics and Gynecology Residency Program**



4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

July 30, 2003

**RE: Ellen Zechman, MD**

This is to acknowledge that I am aware that there will be a mid-quarter RRC meeting on August 18th, 2003. The Departmental Education Committee (RRC) will meet to review the progress during the last six weeks of my remediation / special rotation.    At which time the committee will determine one of the following:

1).    Proceed with the remediation / special PGY2 rotation
2).    Mainstream into a PGY2 position
3).    Termination
4).    Progress into a PGY3 position


Ellen Zechman, M.D. (signature)


Lamar Ekbladh, M.D. (signature)


**B-0023**

Margolis Edelstein
Zechman, E. v. Christiana Care
0340

CHRISTIANA CARE HEALTH SERVICE
Department of Obstetrics and Gynecology
Resident Review Committee
August 18, 2003

**Present:** Lamar Ekbladh, MD Paul Kaminski, MD; Garrett Colmorgen, MD; Gregory Demeo, DO; Moses Hochman, MD; Janice Tildon-Burton, MD; Anthony Bell, DO; Christine Maynard, MD; Estelle Whitney, MD;Robyn Gray, DO (chief resident).
**Invited:** Matthew Hoffman, MD; Joseph Patruno, MD; Gordon Ostrum, MD
**Excused:** Philip Shlossman, MD; Jeffrey Russell, MD Faith Brosch, MD;

| Topic | Findings, Conclusions, & Recommendations | Actions & Follow-up | Pending/ Resolved |
|---|---|---|---|
| 1. Call to Order | Lamar Ekbladh, MD, called to order a meeting of the Departmental Resident Review Committee on Thursday, August 18, 2003 at 5:30 p.m. in Room 1904 at Christiana Hospital. | No action necessary | Resolved |
| 3. Agenda Items | | | |
| 3.1 Site Visit | Our site visit of August 16th went well. Our numbers seemed to have been the biggest issue.    We should receive something sometime in late October. | Follow up from the ACGME sometime in October. | Pending |
| 3.2 Pagers | The pagers should not be referred to as year specific pagers.  They will be given to the appropriate year level resident. | Informational | Resolved |
| 3.3 This rest of this meeting pertained to the review of the progress of Dr. Ellen Zechman | During the past six weeks Dr. Zechman has spent time with several of the faculty for intensive one or one training.   We gave a special invitation for those faculty members involved in her special training but not on this committee (Hoffman, Patruno and Ostrum)<br>We reviewed her progress as individual faculty gave their encounters with her in their week.<br>Concerns listed:<br>- Learning ability<br>- Adaptability<br>- Poor clinical judgment<br>- Very abrupt moves<br>- Attitude/ behavioral<br>- Wanted to be spoon feed<br>- Relationship with her peers is not good<br>- She separated herself from other residents<br>- Very immature about how she deals with things<br>- Other residents are avoiding her<br>- Stressed / depressed<br>- She is playing residents against residents<br>- Had a perfect case and refused to do it<br>- She has threatened residents<br>- Unteachable<br>- Uses people / thinks people are out to get her<br><br>Over the course of the six weeks Dr. Ekbladh has met with her weekly (sometimes more) and reviewed her evaluations, surgical | Dr. Zechman will be re-reviewed at the next RRC meeting. | Pending |

B-0024

Margolis Edelstein
Zechman, E. v. Christiana Care
0427

| | | | |
|---|---|---|---|
| | prog___ _ in general. She shared with Dr. Ekbladh how stressed she is and how depressed she is (waking with her pillow soaked every morning). During these times she was offered counseling for her stress and depression numerous times – all of which were declined.<br><br>After a long discussion on where to go from here with her course of study it was suggested by the committee to do the following:<br><br>- Continue probation with the special PGY2 rotation<br>- Must get active and continuous counseling for stress and depression<br>- Must get learning ability test<br>**\*this was favorably voted upon unanimously by the committee**<br><br>At this time the committee was also informed that Dr. Zechman has started the process for the ADA (American Disability Act) application for a non-specified connective tissue disease. She went on 8/8/03 to her doctor in North Carolina to have him fill out the paperwork (to date nothing has been received). She is requesting a 3-day weekend following the weekend when she was on call.<br>Dr. Ekbladh spoke with Dr. Frasier and it was noted to his knowledge that no specific time off would benefit her disability and that the day following call might actually benefit her more. | | |
| 3.4 ACGME letter | A letter was received from the ACGME (anonymous) regarding a complaint. (letter in educational office for review)<br><br>Dr. Ekbladh noted that the response will go out the end of this week. (response in the educational office for review) | Informational | Pending |
| 3 Meeting adjourned | Meeting was adjourned at 6:45. Next meeting will be held on September 15, 2003 at 5:30PM in room 1904. | Informational | Resolved |

Respectfully submitted,


Sandi Kardos                              Lamar Ekbladh, M.D.
Coordinator                               Program Director

**B-0025**

Margolis Edelstein
Zechman, E. v. Christiana Care
0428



**CHRISTIANA CARE**
HEALTH SYSTEM

Obstetrics and Gynecology Residency Program

4755 Ogletown-Stanton Road
PO Box 6001
Newark, Delaware 19718

302-733-6565 phone
302-733-3340 fax

August 20, 2003

Ellen Zechman, M.D.
34 east Newtown Place,
Newark, DE 19702

Dear Dr. Zechman:

This is a letter in follow up of our discussion concerning the recommendations coming from the residency review committee meeting of August 18, 2003 concerning your progress within the residency program. Significant concerns were expressed with the progress of your surgical skills. It was generally felt that there had been some progress but this progress was not at an appropriate or satisfactory rate. There was also concern about you ability to multi-task and your stress reactions and response to clinical situations. There was also concern about your acceptance of your current needs, and the role that you need to play in meeting those needs. The committee noted that you seem to be exceedingly stressed and you have many signs of depression. Also noted was that you are having trouble interacting with you resident peer group and are having problems meeting your personal and family needs. There was also concern expressed that your emotional status is preventing you from learning appropriately or that there might be an underlying learning disability but that these could not be clearly separated. The committee was impressed with your dedication and desire to accomplish the completion of your training.

The committee is recommending that you currently remain on the GYN service in the same status as a second-year resident with your future rotations to be decided once it is clear what accommodations must be made for your disability. We are currently awaiting the final report from Dr. Frasier. The committee stated that you must see Dr. Judith Marcus for an evaluation for your mental and emotional status and its relation to any learning issues. We need a report from her concerning your status and potential need for continuing interaction.

Margolis Edelstein
Zechman, E. v. Christiana Care
0172

At the end of our discussion you stated that you will see Dr. Marcus and on 8/20/03 you will make an appointment to see her. Clarification of the impact of your emotional status on your performance is very important to the committee in order for them to evaluate your true medical capabilities. We will inform you of the next evaluation date. We also discussed Dr. Joseph Patruno continuing as your mentor and your use of him as a person to go to with problems.

Sincerely,

*Lamar Ekbladh*

Lamar Ekbladh, M.D.
Chair and Active Program Director
Obstetrics and Gynecology

Cc:    Brian Little, M.D.

**B-0027**

Margolis Edelstein
Zechman, E. v. Christiana Care
0173

## Zechman, Ellen H.

| | |
|---|---|
| From: | Kardos, Sandra L. |
| Sent: | Wednesday, August 27, 2003 9:16 AM |
| To: | Zechman, Ellen H. |
| Subject: | RE: PGY2 hours |

Ellen; I appreciate getting your hours but can you please take the time and write them on the sign in/out sheet in your call room from now on.  If everyone did this to me - I'd spend a lot of time re-writing everyone's hours.  Also a correction...

8/17 8AM to 7PM = 11 hours (not 13)

-----Original Message-----
| | |
|---|---|
| From: | Zechman, Ellen H. |
| Sent: | Saturday, August 23, 2003 12:09 PM |
| To: | Kardos, Sandra L. |
| Subject: | RE: PGY2 hours |

This weeks hours Sunday 8/17 thru Saturday 8/23
8/17--8am to 7pm, Sunday day call   13 hrs
 8/18--6am-6:30pm                 12.5
 8/19 6:30 to 6:30                12.0
8/20 6:00to 6:30                  12.5
8/21 6:00 to 6:30                 12.5
8/22 6:00am to 4:45pm  friday        10.75 hrs
8/23 7:00am to Midnight saturday call 17.0 hrs  total hours  7 days worked  87.25 hours..Ellen

-----Original Message-----
| | |
|---|---|
| From: | Kardos, Sandra L. |
| Sent: | Friday, August 22, 2003 10:11 AM |
| To: | DiMichele, Andrea; Barlow, Jennifer; Hammond, Sharice R.; Likhyani, Oona K.; Zechman, Ellen H. |
| Cc: | Ekbladh, Lamar MD; Gray, Robyn; Sturrock, Kelley |
| Subject: | PGY2 hours |

Thanks for doing a much better job this past week with signing in/out.  Here are you hours for the last 4 weeks.

| | week of 8/9 | week of 8/3 | week of 7/27 | week of 7/20 |
|---|---|---|---|---|
| JB: | 79.87 | | | |
| AD: | 80.9 | 79.81 | 73.68 | 64.94 |
| SH: | 75.68 | | | |
| OL: | 56.12 | 59.18 | 72.56 | 74.5 |
| EZ: | | | | |

The weeks not filled in are missing times.

Chiefs; FYI

*Thank you,*
*Sandi Kardos*
*OB/GYN Residency Coordinator*
*& ARCOG Region II Representative*
*(302) 733-6565*
*skardos@christianacare.org*

**B-0028**

Margolis Edelstein
Zechman, E. v. Christiana Care
0348

\# 8

## Zechman, Ellen H.

| | |
|---|---|
| **From:** | Kardos, Sandra L. |
| **Sent:** | Wednesday, September 03, 2003 11:45 AM |
| **To:** | Zechman, Ellen H. |
| **Subject:** | RE: Request for day off |

Ellen;
You can certainly request a vacation day through the normal channels.

Fill out the vacation form (one is attached, just is case you need one).
Give it to the administrative chief for consideration.



vacation.doc

-----Original Message-----

| | |
|---|---|
| **From:** | Zechman, Ellen H. |
| **Sent:** | Wednesday, September 03, 2003 6:09 AM |
| **To:** | Kardos, Sandra L. |
| **Cc:** | Ekbladh, Lamar MD |
| **Subject:** | Request for day off |

Is there any way I can get either Friday or Monday 9/5/03, or 9/8/03 off as a vacation/sick/ excused day.
In line with my July 23 rd request for some creative scheduling, I am now working 18 consecutive days without a 24 hour break, all my large joints ache and I'm wore out.
I have called Dr Fraser, and even sent him a Fax on Aug. 25th requesting his response, have you heard from him yet.
thanks, Ellen

**B-0029**

Margolis Edelstein
Zechman, E. v. Christiana Care
0344

GMEC Policy
Page 1 of 3

## Paid Time Off/Leave Policy

Residents shall be allowed leaves of absence (LOA) subject to federal law, state law, regulations and the requirements of each Residency Program.

**Purpose:**
To define the types of leaves of absence, the process for requesting each and the effect on residency training.

**Scope:**
All residents employed by CCHS.

**Definitions:**
Vacation Time: Residents receive 3 weeks vacation annually. This time may be used for vacation, personal reasons, or sickness. Vacation time is not carried over from one academic year to the next. Vacation time is subject to approval by the Program Director.

Sick Time: Residents receive up to 6 weeks annually of sick time. This time may be used when a resident is unable to attend to his or her assigned duties due to illness or the birth of a child. Program directors must be notified that the resident is using sick time. The program director may request medical documentation for illness extending beyond three (3) days. Sick time is not carried over from one academic year to the next.

**Procedure:**
Leave of Absence: Christiana Care recognizes that residents may need to request a leave of absence. Leaves may be granted for personal or medical reasons, in accordance with the provisions of the Family and Medical Leave Act (FMLA). Under the FMLA, a resident may be granted leave for up to 12 weeks for his or her own medical condition, care of a parent, spouse or child, adoption, placement of a child through foster care or child birth. After such leave the resident will be allowed to return to his or her position, provided he or she is physically capable of performing the essential functions of the position, with or without accommodations as defined by the Graduate Medical Education Committee and individual programs. The timing of return to the program may be dependent upon resident caps and/or other requirements of the appropriate Residency Review Committee.

Medical Leave: A resident who is unable to work due to injury/illness or birth of a newborn (within 12 months of the child's birth) may be eligible for FMLA. The effective day of leave will be retroactive to the first day of absence from work. The resident can elect to use paid sick time and/or vacation time or go into unpaid status.

Personal Leave: A resident may request a personal leave under FMLA for the serious health condition of a parent, spouse or child, adoption, placement of a child with the resident through foster care or birth of a child, (within 12 months of the child's birth e.g. paternity leave). The resident can elect to use vacation time or go into unpaid status.

B-0030

5-03

Margolis Edelstein
Zechman, E. v. Christiana Care
0333

Print this Policy

# Policy D-1 - Leaves of Absence

**DATE EFFECTIVE:** February 16, 2004
**Revisions:** 09/25/01; 08/01/99; 12/29/97; 08/05/93; 11/25/91

## I.  POLICY STATEMENT

Christiana Care recognizes that employees may occasionally need to request a leave of absence for family and/or medical reasons.  This policy outlines Christiana Care's Leave of Absence policy and complies with the Family and Medical Leave Action (FMLA).  Approved leaves protect an employee's continuity of service and provide a job guarantee when an employee returns to work within the specified time frames and is capable of performing the essential functions of the position.

## II.  SCOPE

This policy applies to Christiana Care Health Services, Health Plans, Health Initiatives and Home Health and Community Services.

## III.  DEFINITIONS

### A.  Family Medical Leave Act

Family Medical Leave is defined as the period(s) of absence during a rolling 12-month period measured backward from the current date.  Family Medical Leave may be taken on a continuous or an intermittent basis.  Family Medical Leave may be granted for one of the following reasons:

> 1. The birth of a child or placement of a child with the employee for adoption or foster care.  The leave must be taken within one year of birth or placement.
>
> 2. The care of an employee's spouse (including a common law spouse), child (including a child who is over 18 and incapable of self-care due to a physical or mental disability), or parent with a serious health condition.
>
> 3. Serious health condition that renders the employee unable to perform their job functions.

**B-0031**

### B.  Serious Health Condition

A serious health condition is defined as an injury, impairment, physical or mental condition involving the following:

> 1. Period of incapacity or treatment in connection with or consequent to inpatient care in a hospital, hospice or residential care facility.
> 2. Period in incapacity requiring absence from work, school or other regular daily

Margolis Edelstein
Zechman, E. v. Christiana Care
0299

activities or more than 3 days that involves continuing treatment by (or under the supervison of) a health care provider, or

3. Continuing treatment by (or under the supervision of) a health care provider for prenatal care or a chronic or long-term condition that is incurable or so serious that, if not treated, would result in a period of incapacity of more than 3 days.

### C. Continued Treatment

Continuing treatment means that the individual is treated two or more times by (or under the supervision of or referral by) a health care provider or is treated on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

### D. Reduced Schedule or Intermittent Leave

Employees may be permitted to take an FMLA in several blocks of time rather than in one continuous period of time, or to work under a reduced work schedule by reducing the number of hours they work per week or day. Intermittent and reduced schedule leaves should be monitored and employees should be informed that time taken in this manner will be counted towards their twelve week entitlement under the FMLA.

## IV. ELIGIBILITY FOR FAMILY/MEDICAL LEAVE

### A. Continuous Leave of Absence

Full time and part time employees who complete six months or more of continuous service may be granted a family/medical leave under Christiana Care policy.

All other classification of employees must be employed for at least 12 months and must have worked at least 1250 hours during the 12 month period preceding the date the leave is required in accordance with the requirements of the FMLA. Information concerning other types of leaves are outlined in policies D-2 (Military Leave) and E-5 (Worker's Compensation). In additional to 12 weeks Family/Medical leave, Christiana Care provides and additional 12 weeks of leave for an employee's own serious health condition. Re-employment is not guaranteed during this additional 12 week period.

### B. Intermittent Leave of Absence

Full time and part time employees who complete six months or more of continuous service may be granted intermittent family/medical leave under Christiana Care policy.

All other classification of employees must be employed for at least 12 months and must have worked at least 1250 hours during the 12 month period preceding the date the leave is required in accordance with the requirements of the FMLA.

## V. REQUESTS FOR LEAVE

Margolis Edelstein
Zechman, E. v. Christiana Care
0300

Requests for or notices of Family/Medical Leave must be given by the employee or, if the employee is unable to give notice, by the employee's representative. The employee (or the employee's representative) must provide an explanation for the leave that allows Christiana Care to determine if the leave qualifies as a Family/Medical Leave.

When the need for Family/Medical Leave is foreseeable, the employee must provide at least 30 days advance notice. If it is not possible to provide 30 days notice, the employee must provide as much advance notice of the anticipated timing and duration of the leave as is practical.

Once the need for Family/Medical Leave is known or in cases where the need is not foreseeable, the employee must provide notice of the anticipated leave within 1 or 2 business days of the date that the employee identifies the need for leave, except where extraordinary circumstances apply.

If notice is not provided in 1-2 business days, the employee can not provide a reasonable excuse for the delay, and the notice requirements have not been waived, the Family/Medical Leave may be delayed until at least 30 days following the date notice was provided to the employee.

## VI.  CERTIFICATION OF A SERIOUS HEALTH CONDITION

Family/Medical Leave due to a serious health condition of a family member or the employee must be supported, at the written request of Christiana Care, by a certification issued by the health care provider of the individual with the condition. In the event the certification is inadequate, the employee will be given a reasonable opportunity to cure any deficiency.

Christiana Care will request certification at the time, or soon after, the leave is requested. The certification must be provided within 15 days of Christiana Care's request or such longer period as may be required in particular circumstances.

Christiana Care may require a second medical opinion. In the event of a conflicting opinion, Christiana Care may require a third and final opinion, from a doctor selected jointly by the employee and Christiana Care. Second and third opinions will be paid for by Christiana Care.

Additional subsequent certifications may be requested by Christiana Care, verbally, on a reasonable basis.

Family/Medical Leave will not be authorized until the certification is provided, although leave may be approved on a contingent basis, pending the submission of medical certification.

## VII.  ADMINISTERING LEAVES OF ABSENCE

**B-0033**

Christiana Care will designate all approved leaves, whether paid or unpaid as Family/Medical Leave. If Christiana Care does not have sufficient information to designate paid leave as Family/Medical Leave, it may request additional information from the employee. The designation will generally be made before the leave starts, or before an extension of the leave is granted, unless Christiana Care does not have sufficient

Margolis Edelstein
Zechman, E. v. Christiana Care
0301