IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELLEN ZECHMAN,                          :
                                        :
            Plaintiff,                  :
                                        :
        v.                              :      C.A. No. 05-159-JJF
                                        :
CHRISTIANA CARE HEALTH SYSTEMS,         :
                                        :
            Defendant.                  :

_____

Herbert Weisasser Mondros, Esquire and Lori A. Brewington,
Esquire of MARGOLIS EDELSTEIN, Wilmington, Delaware.

Attorneys for Plaintiff.

Michael J. Ossip, Esquire and Thomas S. Bloom, Esquire of MORGAN,
LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania.
David H. Williams, Esquire of MORRIS, JAMES, HITCHENS & WILLIAMS
LLP, Wilmington, Delaware.

Attorneys for Defendant.

_____

**MEMORANDUM OPINION**

June 26, 2007
Wilmington, Delaware

Farnan, District Judge

Pending before the Court is Defendant's Motion For Summary
Judgement (D.I. 52).  For the reasons discussed, the Court will
grant the Motion.

## I.  Background

Plaintiff, Ellen Zechman, received her medical degree from
East Carolina University ("ECU") in 1994.  After graduation from
medical school, Plaintiff began a four-year residency program in
the Pathology Department at ECU.  During her second year,
Plaintiff left the residency program in order to devote more time
to raising a family.  In 2001, Plaintiff returned to her medical
career full-time to pursue a specialty in Obstetrics and
Gynecology ("OB/GYN").

In early 2002, at the age of 45, Plaintiff was selected to
fill a vacant spot in the Department of Obstetrics and Gynecology
at Christiana Care Health Systems ("Christiana Care") as a
second-year resident starting on June 23, 2002.  Plaintiff's one-
year contract was effective from July 1, 2002, through June 30,
2003, and stated that renewal was contingent upon the
recommendations of the Department Education Committee and Program
Director, fulfillment of all licensure and regulatory
requirements, and approval by the Graduate Medical Education
Committee.  (D.I. 55, A-14).

1

Shortly after starting her residency, Defendant alleges it became apparent that Plaintiff had some academic deficiencies including poor medical knowledge base, poor medical judgment, poor surgical skills, and poor prioritization skills.  On October 28, 2002, the Resident Review Committee ("Committee"), held a meeting to evaluate the performance of all residents.  The Committee's membership consisted of senior OB/GYN physicians employed by Defendant and outside attending physicians not employed by Defendant.  According to Defendant, one of the Committee's functions is to evaluate the progress of residents and determine their status in the residency program.  At the October 2002 meeting, because of the concerns about Plaintiff's skill level and performance in the program, the members of the Committee voted unanimously to appoint a faculty mentor, Dr. Patruno, to assist Plaintiff.

In December 2002, the then Residency Director, Dr. Anthony Sciscione, met with Plaintiff to review her progress in the residency program.  Dr. Sciscione decided that it would be necessary to intensify Plaintiff's training in order to bring her to the same level of ability as other residents.  A remediation program was designed for Plaintiff to include extra one-on-one instruction from all faculty.  It was also recommended that Plaintiff attend extra rounds.  Plaintiff voiced disapproval of the remediation program via email conversations with Dr. Ekbladh, Chief of Defendant's OB/GYN Department.

2

Despite the remediation program, Defendant alleges that Plaintiff's evaluators continued to express concerns about her medical knowledge, medical judgment, progress, and resistance to the faculty's efforts to help her improve.  At a meeting held on March 17, 2003, the Committee discussed Plaintiff's alleged inability to meet the skill level of other residents.  The members of the Committee discussed various options for Plaintiff's participation in the program, including: a third year contract; a third year contract with ongoing remediation; a second year repeat contract with ongoing remediation; or no contract.  During this meeting, members of the Committee voted to re-evaluate Plaintiff's contract at the next meeting in order to decide whether to renew Plaintiff's contract.  From March 2003 to June 2003, Defendant alleges that  Plaintiff's performance in the program did not improve.  On June 16, 2003, the Committee considered terminating Plaintiff, but instead, decided to offer her the opportunity to repeat her second year of the residency program on a probationary status.  Plaintiff agreed to this contract.  However, according to Plaintiff, as a result of having to repeat her second year, she was even more isolated from her residency program colleagues.

On July 23, 2003, Plaintiff sent a letter to Dr. Ekbladh requesting accommodation for a medical condition diagnosed in 1997 as "a mixed connective tissue disorder."  Plaintiff contends that the medical condition interfered with her work by causing

3

her to suffer from occasional inability to concentrate, depression, fatigue, and joint pain, along with other more serious side effects. Plaintiff contends that her medical condition hindered her ability to function normally at her job because the high level of stress she experienced as a resident caused more "flare-ups" of her symptoms. Plaintiff requested an accommodation of two guaranteed three-day vacations per month.

In response to Plaintiff's request for accommodation, Dr. Ekbladh asked Plaintiff to provide supporting medical documentation for her condition. On August 11, 2003, Dr. Ekbladh spoke to Plaintiff's treating physician, Dr. Fraser, who told Dr. Ekbladh that time off would help Plaintiff manage her fatigue but gave no specific recommendation as to how to arrange the time off. Dr. Fraser faxed a written report regarding Plaintiff's condition and recommended that Plaintiff be allowed periods of rest during work and liberal use of vacation time to prevent flare-ups. As a result, Dr. Ekbladh decided to have Plaintiff apply for intermittent leave pursuant to the Family Medical Leave Act.

On July 30, 2003, Plaintiff signed a statement acknowledging that the members of the Committee would review her progress at their next meeting, to be held on August 18, 2003, and decide whether she should continue her status as a second year resident on probation, become a normal second year without probation, or be terminated from the program. At the August 18 meeting, the

4

Committee invited three faculty members who had worked with
Plaintiff to discuss Plaintiff's progress.  According to the
meeting minutes, Committee members voiced numerous concerns about
Plaintiff's performance, as well as concerns about her mental
health.  (D.I. 55, A-65).  The Committee ultimately decided to
keep Plaintiff as a probationary second year resident on the
condition that she seek psychological counseling.  The Committee
also decided to review Plaintiff's progress at their next meeting
to be held in September 2003.  (D.I. 55, A-64).

On September 29, 2003 the Committee met again to evaluate
Plaintiff's performance.  At the conclusion of the meeting, the
Committee members voted to terminate Plaintiff's residency citing
such factors as low evaluation scores, "not performing at
appropriate level," failure to improve even with special help,
"poor clinical judgment," and resistance to "educational
interaction."  (D.I. 55, A-80).  By letter dated September 30,
2003, and marked as sent on October 2, 2003, Dr. Ekbladh informed
Plaintiff that she was dismissed from the program for academic
reasons.  (D.I. 55, A-83).

On September 16, 2003, before Plaintiff's termination, Dr.
Ekbladh informed Plaintiff that, in order to determine whether
she was eligible for intermittent leave due to her medical
condition under the Family and Medical Leave Act, she needed to
submit, within fifteen days, a "Certificate of Healthcare
Provider" completed by her medical provider.  Plaintiff alleges

5

that she faxed the "Certificate of Healthcare Provider" to Christiana Care on or about September 22, 2003. However, the fax was marked received on October 3, 2003. (D.I. 55, A-84). On October 6, 2003, Defendant approved Plaintiff's request for FMLA leave for intermittent time and reduced work schedule. (D.I. 55, A-90).

On June 14, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against her on the basis of age and disability and that Defendant retaliated against her. On March 15, 2005, Plaintiff filed the instant action alleging: 1) age discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and Delaware state law, 19 Del. C. § 711; 2) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Delaware state law, 19 Del. C. § 723, 724, 726; 3) retaliation; 4) detrimental reliance; and 5) breach of the covenant of good faith and fair dealing[1] arising out of the termination of her employment. Defendant now moves for summary judgment.

---

[1] In her Answer Brief to Defendant's Motion, Plaintiff voluntarily dismisses her claim of breach of good faith and fair dealing. (D.I. 57 at 1). Accordingly, the Court will not discuss that claim.

6

## II.  LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party.  However, a court should not make credibility determinations or weigh the evidence.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts.  In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III. DISCUSSION

A.    Whether Defendant Is Entitled To Summary Judgment On Plaintiff's Age Discrimination Claim

By her Complaint, Plaintiff alleges that Defendant deprived her of equal employment opportunity and otherwise affected her employment because of her age.  Plaintiff contends that there was an "inherent age based bias" against her because she was the oldest resident in her program.  By its Motion, Defendant contends that Plaintiff's age discrimination claims fail as a matter of law because there is no evidence that age was a motivating factor or pretext for her termination from the residency program.

When considering age discrimination claims under the ADEA, a court must use the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 330 (3d Cir. 1995).  Under this analysis, a plaintiff must first establish a prima facie case of discrimination. Green, 411 U.S. at 802.  A prima facie case of age discrimination under the ADEA requires the plaintiff to allege four elements: 1) he or she is at least 40 years of age, 2) he or she is qualified for the position in question, 3) he or she has suffered an adverse employment action, and 4) he or she has been replaced by a sufficiently younger employee to permit a reasonable inference of age discrimination. Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

8

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant.  The defendant must "articulate some legitimate, nondiscriminatory reason" for its conduct.  <u>Green</u>, 411 U.S. at 802.  If the defendant produces a sufficient reason for its actions, the burden shifts back to the plaintiff to demonstrate that the reasons articulated by the defendant are merely a pretext for discrimination.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  To defeat a motion for summary judgment, a plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Id</u>.  To accomplish this, a plaintiff can show a defendant's reasons are so weak, incoherent, implausible, or inconsistent such that they lack credibility.  <u>Id</u>. at 765.

Reviewing the evidence presented by the parties in this case in the light most favorable to Plaintiff, the Court concludes that no factfinder could reasonably find for Plaintiff on her age discrimination claim.  It is not disputed that Plaintiff was over 40 and suffered the adverse employment action of termination from the residency program.  However, the Court concludes that Plaintiff has failed to establish sufficient evidence that she

was qualified for continued employment in the residency program. Specifically, the Court concludes that Plaintiff has not presented evidence that she met the expected level of competency to be qualified for continued participation in the residency program.  Members of the Resident Review Committee and other teaching physicians documented their concerns about Plaintiff's below-average skill level and lack of progress shortly after Plaintiff began her first year in the residency program in July 2002.  As early as October 2002, Committee members initiated various remedial efforts intended to raise Plaintiff's performance level, including mentoring and one-on-one instruction.  However, despite these efforts, the evidence shows that Plaintiff did not improve at a pace considered satisfactory by the teaching physicians.  Although Plaintiff's contract was renewed once, effective until June 30, 2004, Plaintiff remained at the same second-year status as the first contract. Eventually, members of the Committee voted to terminate Plaintiff's participation in the program after nearly two years of training, citing various academic and performance deficiencies.  On this record, the Court concludes that Plaintiff has not provided evidence to establish that she was qualified for continuation in the residency program, and therefore, no factfinder could reasonably find that Plaintiff has established a prima facie case of age discrimination.

Furthermore, even if Plaintiff were able to establish a prima facie case, Plaintiff has not shown that Defendant's articulated reasons for its decision to terminate Plaintiff from the residency program were merely a pretext for discrimination. In its termination letter to Plaintiff, Defendant cited academic reasons as the cause for Plaintiff's termination from the program.  As discussed above, members of the Committee and other attending physicians documented their concerns about Plaintiff's lack of ability and improvement throughout her time in the residency program.  Thus, considering all the evidence presented, the Court concludes that Defendant has articulated legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff from the residency program.  Because of this conclusion, the burden shifts to Plaintiff to show that Defendant's articulated reasons for termination were a pretext for age discrimination.

Plaintiff contends that she experienced an "inherent age based bias" from faculty and colleagues in the residency program. Plaintiff was the oldest resident in the program and her age was known to the faculty and other residents.  In support of her contentions, Plaintiff cites several incidences of alleged bias-revealing actions by Defendant.  For example, Plaintiff contends that Sandy Kardos, Defendant's Residency Coordinator, stated, "[y]ou certainly don't look your age," when viewing her driver's

11

license.  Plaintiff contends that she was routinely questioned by other program participants why she wanted to be a resident at this stage in her life.  Plaintiff further contends she was considered an "outsider" by her peers and that she felt animosity from other residents, including the Chief Resident, because she was "different".  Additionally, Plaintiff contends that she was required to do more work and more rigorous work than the other residents, that she was reassigned from surgical training by the Chief Resident, and that she was denied learning opportunities.

In the Court's view, these examples, taken as true, fail to support a claim of pretext such that a factfinder might reasonably disbelieve Defendant's assertion that Plaintiff was terminated for reasons related to her lack of abilities and skills as a physician.  Accordingly, the Court will grant Defendant's Motion with respect to Plaintiff's federal and state law age discrimination claims.[2]

    B.    <u>Whether Defendant Is Entitled To Summary Judgment On Plaintiff's Disability Discrimination Claim</u>

In her Complaint, Plaintiff alleges that Defendant violated her rights under the ADA by constructively discharging her as a

---

[2] Because the analysis for age discrimination claims under Title VII of the Civil Rights Act and state law, 19 Del. C. § 711, is also based on the <u>McDonnell-Douglas</u> analysis, the Court will not address these claims separately and concludes that they fail for the same reasons that Plaintiff's age discrimination claim fails under the ADEA.  <u>See</u> <u>Giles v. Family Court of Delaware</u>, 411 A.2d 599, 601-02 (Del. 1980).

result of a real or perceived disability and by denying her request for reasonable accommodation. Plaintiff also alleges she was denied equal employment opportunity because of an actual or perceived disability. By its Motion, Defendant contends that Plaintiff's disability discrimination claims are not sustainable as a matter of law because Plaintiff's medical condition does not constitute a disability under the ADA, Defendant offered Plaintiff accommodation, and Defendant's reasons for terminating Plaintiff are not a pretext for discrimination.

To prove a prima facie case of discrimination under the ADA, the employee must demonstrate that he or she 1) has a disability, 2) is a qualified individual; and 3) has suffered an adverse employment action. Deane v. Pocono Medical Center, 142 F.3d 138, 142 (3d Cir. 1998). Reviewing the evidence here in the light most favorable to Plaintiff, the Court concludes that no jury could reasonably find for Plaintiff on her disability discrimination claim because the Court concludes that Plaintiff has failed to adduce evidence that she is a qualified individual.[3] Under the ADA, a "qualified individual" is one

---

[3] For purposes of the ADA, a disability is a physical or mental impairment that substantially limits a major life activity, taking into account any measures needed to correct for or mitigate the impairment. Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999). If the plaintiff cannot demonstrate that his or her impairment meets the definition of a "disability" under the ADA, the plaintiff cannot establish a prima facie case of disability discrimination. Kelly v. Drexel, 94 F.3d 102, 105, 109 (3d Cir. 1996). In such circumstances, summary judgment is appropriate. Id. The Court is not persuaded that Plaintiff has adduced evidence sufficient to convince a jury to reasonably find that she is substantially limited by her intermittent and

"who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). According to the EEOC regulations, a court must first determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the position. 29 C.F.R. pt. 1630, app. § 1630.2(m)  If so, the court must next determine whether the individual can perform the essential functions of the job with or without accommodation. Id.

Considering all the evidence presented by the parties, the Court concludes that Plaintiff has not established that she was qualified for the residency program, regardless of accommodation for any disability.  Evaluations of Plaintiff's performance in the residency program by attending physicians and members of the Committee clearly establish that, as early as October 2002, Plaintiff was performing below the level of her peers and was resistant to the efforts of the teaching physicians to assist her performance.  Thus, reviewing all the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not shown that she was able to perform the essential functions of her job prior to requesting the accommodation or even with the

_____

sporadic condition in a major life activity.  However, because the Court concludes that Plaintiff cannot establish she is a qualified individual, the Court need not discuss this element of the prima facie case.

14

requested accommodation.  Thus, the Court concludes that no

factfinder could reasonably conclude that Plaintiff is a

qualified individual for the residency program.  Accordingly, the

Court will grant Defendant's Motion with respect to Plaintiff's

claims for violation of the ADA and federal and state law claims

for disability discrimination.[4]

      C.   <u>Whether Defendant Is Entitled To Summary Judgment On</u>
          <u>Plaintiff's Retaliation Claim</u>

In her Complaint, Plaintiff alleges that Defendant

retaliated against her for her complaints about treatment from

her colleagues, supervisors and instructors, complaints about not

receiving training, her complaint to the Accreditation Council

for Graduate Medical Education ("ACGME"), and her request for

accommodation.  Plaintiff alleges various retaliatory acts such

as being reassigned from surgical duty to triage, being treated

differently from her colleagues, and not being offered a third-

year contract.  In her Answer Brief In Opposition to Defendant's

Motion For Summary Judgment, Plaintiff contends she engaged in

activity protected by the ADA and ADEA by filing a complaint with

---

[4] Because state law provisions governing disability
discrimination, 19 Del. C. § 720 <u>et</u> <u>seq</u>., closely mirror the
language and requirements of the ADA, the Court concludes that
Plaintiff's state law claims fail for the same reasons that the
federal law claims fail under the ADA.  <u>See</u> <u>Testerman v. Chrysler</u>
<u>Corp.</u>, No. 95-240-GMS, 1997 U.S. Dist. LEXIS 21392, at *43 (D.
Del. Dec. 30, 1997) (concluding that because the definitions in
the Delaware statute regarding "handicapped person" mirrored
those in the ADA, the holding for summary judgment on the federal
claim applied to the state law claim as well).

the ACGME and for requesting an accommodation for her medical condition, and that Defendant retaliated by terminating her participation in the residency program.

To establish a prima facie case of retaliation under the ADA or the ADEA, plaintiff must show: "1) protected employee activity; 2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). If an employee establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the alleged retaliatory action. Id. If the defendant satisfies the burden, the plaintiff must prove by a preponderance of the evidence that the allegedly legitimate reasons offered by the defendant were a pretext for retaliation. Id.

Considering the evidence presented in the light most favorable to Plaintiff, the Court concludes that no factfinder could reasonably find for Plaintiff on her retaliation claim. Specifically, regarding Plaintiff's prima facie case, the Court concludes that Plaintiff has not adduced evidence to establish a causal link between Plaintiff's allegedly protected employment activity and her termination. To establish a causal link, "the plaintiff must present evidence sufficient to raise the inference

16

that her protected activity was the likely reason for the adverse action.  Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." Ferguson v. E.I. DuPont de Nemours & Co., 560 F.Supp. 1172, 1200 (D. Del. 1983) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982)).  Here, the Court concludes that Plaintiff has not presented facts to establish that Defendant was aware that Plaintiff's complaint to the ACGME alleged discriminatory practices or that Plaintiff was the author of the complaint.  The communication between the ACGME and the Defendant about Plaintiff's complaint informed Defendant only that it had received an anonymous complaint about Defendant's treatment of all the residents in the program.  The information did not include Plaintiff's name or any allegations of discriminatory treatment.

Further, the Court concludes that Plaintiff has not adduced sufficient evidence to support an inference that her complaint to the ACGME or her request for accommodation were likely reasons for her termination.  Plaintiff's request for accommodation was made on or about July 24, 2003 and her complaint to the ACGME was made known to Defendant by letter dated July 28, 2003.  (D.I. 55, A-48, A-54).  However, as early as October 2002, concerns with Plaintiff's academic level and lack of progress were brought to Plaintiff's attention.  The Committee members considered

17

termination of Plaintiff's participation in the program as early
as June 16, 2003 but renewed her contract in June 2003 only on
the probationary condition that Plaintiff repeat her second-year
of the program.  Further, the Court notes that the record does
not reflect that Plaintiff's academic performance in the program
improved between the time the initial concerns with her progress
arose and the time of her termination in September 2004.  On this
evidence, the Court concludes that Plaintiff has not set forth
facts showing that retaliation, rather than academic reasons, was
the reason for her termination and therefore, the Court concludes
that Plaintiff has failed to establish a causal link between her
complaint to the ACGME or request for accommodation and her
termination.  Accordingly, the Court concludes that no factfinder
could reasonably find that Plaintiff has established a prima
facie claim for retaliation.

     Additionally, even if Plaintiff were able to establish a
prima facie case of retaliation, Defendant has articulated a
legitimate, non-retaliatory reason for its action and Plaintiff
has failed to adduce specific facts to show that Defendant's
reason is a pretext for discrimination.  Defendant contends that
Plaintiff was terminated from the program for academic reasons.
Plaintiff contends that Defendant's articulated reason for
terminating her is pretext for discrimination because, <u>inter
alia</u>, a short period of time elapsed between her request for

accommodation and her termination, because she was denied the
opportunity to learn, and because Defendant refused to
accommodate her disability.  The Court finds that the record
evidence is contrary to Plaintiff's contentions.  Plaintiff was
given time and opportunity to improve her performance, including
specialized attention.  In addition, discussions regarding the
possibility of termination as a remedy to Plaintiff's failure to
progress occurred prior to her request for accommodation.  Thus,
the Court concludes that Plaintiff has not presented facts of
direct or circumstantial evidence of pretext.  Accordingly, the
Court concludes that the Plaintiff has not set forth sufficient
evidence to enable a jury to reasonably find for Plaintiff on her
retaliation claim, and therefore, will grant Defendant's Motion
with respect to this claim.

      D.    <u>Whether Defendant Is Entitled To Summary Judgment On
Plaintiff's Detrimental Reliance Claim</u>

    In her Complaint, Plaintiff alleges that she "relied to her
detriment upon the representations of Defendant that she would be
afforded the opportunity to improve her surgical skills, and that
Defendant would accommodate her disability" and that these
representations caused her to suffer loss of employment and other
consequences including damage to her reputation.  By its Motion,
Defendant contends that Plaintiff's detrimental reliance claim
fails as a matter of law because two valid employment contracts
govern the parties relationship and encompass all of the parties'
obligations.

Although Plaintiff labels her claim as one based on detrimental reliance, it is more appropriately characterized as a claim for promissory estoppel. To succeed on a claim for promissory estoppel, "a plaintiff must prove: i) the making of a promise; ii) with the intent to induce action or forbearance based on the promise; iii) reasonable reliance; and iv) injury." Brooks v. Fiore, 2001 U.S. Dist. LEXIS 16345, at *15 (D. Del. Oct. 11, 2001). "The asserting party must be able to prove the [] elements of promissory estoppel by clear and convincing evidence. Moreover, the promise, in such a case, must be definite and certain." Continental Ins. Co. v. Rutledge & Co., Inc., 750 A.2d 1219, 1233 (Del. Ch. 2000).

With respect to Defendant's alleged promise to accommodate Plaintiff's medical condition, the Court concludes that Plaintiff's claim is not sustainable as a matter of law. "Promissory estoppel cannot be predicated upon a promise to do that which the promisor is already obliged to do." Brooks, 2001 U.S. Dist. LEXIS 16345 at *17. Here, Defendant is legally required under the ADA to accommodate disabled employees, and therefore, the Court concludes that, Plaintiff's claim must fail because Defendant's alleged promise to accommodate her disability is not an actionable promise.

Additionally, the Court concludes that Plaintiff's promissory estoppel claim fails with respect to Defendant's alleged promise of opportunity to improve her surgical skills.

20

Plaintiff contends that Defendant was aware that her surgical skills were below those of others in her class when she was offered placement in the residency program and that Dr. Sciscione promised Plaintiff she would have ample opportunity to improve her skills.  Plaintiff contends that, once she was in the program however, she was unable to gain practical surgical experience because she was reassigned from surgical cases due to the "inherent bias" held against her by the attending physicians and the Chief Resident.  The Court finds that the record evidence shows that Dr. Sciscione made the statements regarding opportunity to improve her surgical skills in the context of describing to Plaintiff the differences between Defendant's residency program and the programs of other teaching hospitals during the interview process.  The Court concludes that, because improving residents' surgical skills was an educational objective of the residency program, Defendant's obligation to provide such opportunity was subsumed in the parties' employment agreement. Because of the Committee's concerns about Plaintiff's inadequate skill level and Plaintiff's awareness of the Committee members' concerns, the Court concludes that Plaintiff has not presented evidence showing it was reasonable for her to rely on Dr. Sciscione's comment in any other context.  Accordingly, the Court concludes that no factfinder could reasonably find for Plaintiff on her detrimental reliance claim, and therefore, will grant Defendant's Motion with respect to this claim.

21

**IV.    CONCLUSION**

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgement on all counts of Plaintiff's Complaint.

An appropriate Order will be entered.